(No. 11258.—Reversed and remanded.)

THE PEOPLE ex rel. The Golconda Northern Railway et al.
Appellees, vs. THE TOLEDO, ST. LOUIS AND NEW OR-
LEANS RAILROAD COMPANY et al. Appellants.

*Opinion filed October 23, 1917—Rehearing denied Dec. 5, 1917.*

1. QUO WARRANTO—*where public interests are involved, leave
to file information will not be denied because private ends will be
served.* The mere fact that a private corporation and private citi-
zens join as relators and are interested in the outcome of the suit
or have employed counsel to assist in its prosecution does not op-
erate to change the character of a proceeding in the nature of *quo
warranto,* and where public interests are clearly involved it is no
defense to plead that in a determination of the case private ends
will be served.

2. SAME—*when two corporations may be joined as defendants
in quo warranto.* In a proper case two corporations may be joined
as defendants in a *quo warranto* proceeding, and where two rail-
road companies are creatures of the same statute both companies
are necessary parties to an information attacking the authority of
one to grant and the other to accept a deed transferring a right
of way and franchise.

3. RAILROADS—*protection of located right of way extends for a
period of ten years, only.* Under the Railroad act a railroad com-
pany which has located its right of way is protected in such loca-
tion and no other corporation can build a railroad upon it; but
such protection extends for a period of ten years, only, and if the
company fails to complete its railroad within that time it loses its
right to claim the located line as a right of way and land compris-
ing the right of way assumes its former status as private property.

4. SAME—*railroad company cannot transfer right of way and
franchise in evasion of section 26 of Railroad Incorporation act—
ouster.* Under section 26 of the Railroad Incorporation act, if a
railroad company organized under the act fails to build a road upon
its located right of way within ten years the company loses control
over the property as a right of way, and an attempt to evade the
statute by a transfer of the right of way and franchise to another
company may be inquired into by *quo warranto* proceedings and
both companies ousted from the franchise of constructing the road
upon said right of way, without determining the title to the realty.

APPEAL from the Circuit Court of White county; the
Hon. J. C. EAGLETON, Judge, presiding.

E. B. GREEN, JOHN W. BROWNING, C. L. V. MULKEY, and WHITNEL & WHITNEL, for appellants.

JOE A. PEARCE, (BARR & FEIRICH, CHARLES DURFEE, and JAMES C. COURTNEY, of counsel,) for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

On April 27, 1915, the People, on the relation of the Golconda Northern Railway and six individuals, filed an information in the nature of *quo warranto* in the circuit court of White county against the Toledo, St. Louis and New Orleans Railroad Company and the Gulf Lines Connecting Railroad of Illinois. The chief object of the proceeding is to prevent either of said respondents from constructing a railroad on a right of way one hundred feet wide, extending from the city of Carmi, in White county, to a point near Brookport, in Massac county, a distance of about eighty miles. A demurrer having been sustained to the original information, the People filed an amended information, alleging, in substance, so far as is material here to be noted, that the Toledo Company was organized under the Railroad act of this State on March 18, 1902, with a capital stock of $50,000, and was authorized by its charter to construct a railroad from a point in Shelby county, Illinois, to a point in the Ohio river in Massac county, but did not finish any railroad, or any part of any railroad in operation, within ten years from the time of filing and recording its articles of association, as required by law; that on January 26, 1912, the Gulf Lines Company was organized under the Railroad act of this State, with a capital stock of $50,000, and was authorized by its charter to construct a railroad from a point at or near Danville, in Vermilion county, to a point at or near Brookport, in Massac county; that on March 5, 1912, the Toledo Company executed and delivered to the Gulf Lines Company a deed purporting, in consideration of the assumption by the grantee

of all obligations, liabilities and indebtedness of the grantor and the further consideration of one dollar, to convey to the Gulf Lines Company, its successors and assigns, "all that part of the grantor's located railroad lines and branches lying south of station 3985 of the grantor's location survey, situated in Main street, East Carmi, White county, Illinois, to be constructed, together with all the real estate, right of way, works and other assets and property, real, personal or mixed, appurtenances, rights, privileges, franchises, powers and immunities of the grantor, and all interest therein, including particularly all and singular the following described railroad lines and franchises and property of the grantor, to-wit: The located line for a railroad, with all its appurtenances, beginning at station 3985 of the location survey, situated in Main street, East Carmi, White county, Illinois, extending southerly through said White county, thence through Gallatin, Hardin, Pope and Massac counties to a point in the Ohio river at or near Brookport, in said Massac county," etc.; that at the same time the Toledo Company executed and delivered to the Gulf Lines Company quit-claim deeds purporting to convey to it scattered pieces of land one hundred feet wide, described in said deed as extending fifty feet on each side of the center line of the Toledo, St. Louis and New Orleans railroad, as the same was surveyed and finally located and passes through the same; that there exists a narrow pass in Pope county extending for more than two miles between mountains and rocky hills on one side and the Ohio river on the other side, which pass is scarcely wide enough to permit the construction of one railroad track through the same; that the right of passage through this pass is a dominating and commanding factor in the construction of any railroad connecting the counties of White, Gallatin, Hardin and Pope with the counties lying west or northwest or southwest of the pass; that the strips of land described in the quit-claim deeds above mentioned are situated in and occupy the entire

280 — 32

space of the strategic pass, and that the only located line for the construction of a railroad ever adopted or ever attempted to be adopted by the board of directors of the Toledo Company extended only about two miles in Pope county so as to include the narrow, strategic pass above mentioned, thereby preventing and hindering any other railroad from procuring a right of way through the pass; that since the execution of the deeds above mentioned the Gulf Lines Company has exercised, and continues to exercise, the franchise of holding, owning and possessing, by virtue of the deed first above mentioned, a prior located line for the construction of a railroad through the counties mentioned in the deed, and by virtue of the quit-claim deeds above mentioned the strips of land therein described, to the exclusion of all other railroads; that neither the Toledo Company nor the Gulf Lines Company ever owned, possessed or operated a railroad in the State of Illinois or elsewhere; that said deeds were concocted, executed and delivered as a cloak and disguise for the purpose of evading the law and practicing a fraud upon the State of Illinois; that, in fact, the grantor and grantee corporations mentioned in the deeds are one and the same corporation under the disguise of different charters and names; that there was at the time of the execution and delivery of the deeds, and there still is, an absolute community and union of interest between both of said companies, and that a syndicate, known as the Toledo, St. Louis and New Orleans Railroad Syndicate, was the promoter and organizer of both of said companies, which syndicate was at the time of the execution and delivery of the deeds, and still is, the owner of a controlling interest in each, and that there was, in fact, no change of interest by reason of the execution and delivery of said deeds.

The respondents filed fifteen pleas to the information. Each of these pleas, while denying some of the charges contained in the information, admits the organization of the

Toledo Company and the Gulf Lines Company under the Railroad act of this State, as charged in the information, and admits the execution and delivery of the deeds mentioned in the information from the Toledo Company to the Gulf Lines Company, and the attempted surrender and delivery of all the property rights of the Toledo Company to the Gulf Lines Company except a portion thereof attempted on the same day to be conveyed to the Chicago, Paducah and Thebes Railway Company, a corporation organized under the Railroad act of this State at the same time the Gulf Lines Company was organized. The pleas allege that the Toledo Company was at the time it executed and delivered the said deeds, seized in fee simple and in possession of the right of way thereby conveyed. As a reason for the making of these conveyances the pleas allege that the ten-year period from the date of the organization of the Toledo Company was about to expire; that the Toledo Company had expended a large sum of money, amounting to approximately $80,000, towards obtaining its right of way and making preparations to construct a railroad upon such right of way but had been unable to build a railroad, and that it made such conveyances in order to procure the construction of the railroad and to avoid the loss of the money expended and invested in its property. It is also alleged in the pleas that after the Toledo Company had, in 1909, commenced the active work of clearing off its right of way, the Golconda Northern Railway was organized, and that after the execution of the deeds from the Toledo Company to the Gulf Lines Company the Golconda Company laid claim to the lands constituting the right of way of the Gulf Lines Company in and through the pass mentioned in the information and proceeded to obstruct and endeavor to prevent the Gulf Lines Company from building its railroad; that the Golconda Company on February 6, 1913, obtained a temporary injunction against the Gulf Lines Company in the circuit court of Pope county, re-

straining the Gulf Lines Company from proceeding with its work of constructing a railroad through said pass; that upon final hearing the bill for injunction was dismissed for want of equity and the decree dismissing the bill for injunction was thereafter affirmed by the Supreme Court of Illinois, and that the filing of the information in this case was instigated and procured by the Golconda Company in furtherance of its design to prevent the construction of a railroad through said pass by the Gulf Lines Company.

A demurrer interposed to each and all of the pleas was sustained, and respondents having elected to stand by their pleas, the court rendered judgment against them, which judgment, after a recital of findings of fact, proceeds as follows: "The court further finds both of said defendants guilty in manner and form as charged in the information, and the judgment of this court is that each of said defendants be and they are hereby fined the sum of $25, and each of said defendants is adjudged to pay one-half the costs of this proceeding, and executions are awarded accordingly; and it is the further order and judgment of the court that the said Toledo, St. Louis and New Orleans Railroad Company and the said Gulf Lines Connecting Railroad Company of Illinois, and each of them, be ousted from holding all or any part of said located line and right of way franchises, as the same are particularly above described." From that judgment the respondents have prosecuted this appeal.

The mere fact that a private corporation and private citizens joined as relators are interested in the outcome of the suit or have employed counsel to assist in the prosecution of the suit does not operate to change the character of the proceeding. Public interests are clearly involved, and it is no defense to plead that in a determination of the questions involved private ends will be served.

The information is not defective, as contended, because of the misjoinder of the parties defendant. In a proper case two corporations may be joined as defendants in *quo*

*warranto* proceedings.  In *Eel River Railroad Co.* v. *State*, 155 Ind. 433, the Eel River Railroad Company and the Wabash Railroad Company were made joint defendants, it being charged in the information that the Eel River Railroad Company had subjected its charter to forfeiture because of the usurpation of power in the leasing of corporate property by it to the Wabash Railroad Company.  The court in that case said: "The Wabash Railroad Company, as the lessee of the railroad and property of the Eel River Railroad Company and a participant in the alleged wrongful acts and omissions of the Eel River Railroad Company, was properly joined as a co-defendant with that company." To the same effect is *People* v. *Albany and Vermont Railroad Co.* 77 N. Y. 232.  The Toledo Company and the Gulf Lines Company are creatures of the same statute.  We are called upon to pass upon the power of the Toledo Company to execute the deed in question and the power of the Gulf Lines Company to take under the same.  A determination of either branch of the question affects both companies, and both are necessary parties.

Section 26 of the Railroad Incorporation act (Hurd's Stat. 1916, p. 2076,) is as follows: "If any railway corporation organized under this act, shall not, within two years after its articles of association shall be filed and recorded as provided in the second section of this act, begin the construction of its road, and expend thereon twenty-five per cent on the amount of its capital, within five years after the date of its organization, or shall not finish the road and put it in operation within ten years from the time of filing its articles of association, as aforesaid, its corporate existence and powers shall cease."  The information charges that the deed in question was made for the purpose of evading this statute and defeating its purpose and is therefore a fraud upon the public.  While the pleas expressly deny that it was intended to defraud the public, they do in plain terms state that the purpose of the transfer was to evade

the provision of the statute requiring the railroad to be completed and put in operation within ten years. The purpose of this statute cannot be thus defeated. A railway corporation is a creature of the statute and derives all its powers from it. When it once locates its right of way the law protects it and will not allow another corporation to build its railroad on that right of way. This protection is extended, however, for a limited time, only. For ten years it is given the exclusive right to build its railroad over its located right of way. If it fails to complete its railroad within that time its right to claim the property as a right of way ceases. In the judgment of the General Assembly the interests of the public demand that property must not be tied up in this manner for a longer period than ten years. At the end of that time, if the railroad has not been completed, the protection afforded by the statute to a regularly located right of way is withdrawn and the land comprising the right of way assumes its former status as private property and becomes subject to all the burdens and liabilities of other realty. Any railway corporation desiring to do so may then, and not before, locate its lines over it or any part of it. A railway company by failing to complete its railroad and put it in operation as required by the statute loses all dominion over its realty as right of way property, and will not be permitted to do any act which will result in securing to any particular railway company the exclusive right to appropriate its located right of way. The right of the public, under the statute, to require the completion of a railroad within ten years after the company is chartered or to enforce the forfeiture of the charter powers of the company cannot be defeated by the methods employed in this case. It is contrary to public policy to permit a railway company to control a located right of way, without completing its railroad, for a longer time than the stautory period. The Toledo Company was without the power or authority to select a successor who should hold this prop-

erty as a right of way for a new period of ten years. Had the Toledo Company the power to make this transfer, then the Gulf Lines Company, upon the forfeiture of its charter under this section of the statute, could by a similar transfer select its successor, and in this way the statute could be rendered absolutely nugatory. The mere statement of the proposition answers the contentions of the respondents. It is evident that the attempt to make this transfer in order to defeat the provision of the statute was a fraud upon the public and that the State has the right to inquire into it by *quo warranto* proceedings.

It is urged that under clause 2 of section 19 of the Railroad Incorporation act (Hurd's Stat. 1916, p. 2074,) the Toledo Company had the power to make this attempted transfer. That clause is as follows: "Every corporation formed under this act shall, in addition to the powers hereinbefore conferred, have power: * * * To take and hold such voluntary grants of real estate and other property as shall be made to it, in aid of the construction and use of its railway, and to convey the same when no longer required for the uses of such railway, not incompatible with the terms of the original grant." The cases cited by respondents under this statute merely hold that where real estate has been purchased for right of way without any restrictions or reservations the company acquires a fee simple title, which it may convey to others when the property is no longer needed for railway purposes. None of these cases deal with the right of a company to transfer the whole of its located right of way or any appreciable portion thereof. No case has been called to our attention which holds that a railroad company can legally transfer its right of way and franchises to another corporation unless authorized by statute so to do.

Respondents contend that under the holding in *Golconda Northern Railway* v. *Gulf Lines Connecting Railroad,* 265 Ill. 194, this transfer cannot be attacked. In support of

this contention they quote from the opinion in that case, as follows: "It is urged that by the abandonment of the right of way by the Toledo, St. Louis and New Orleans Railroad Company the property reverted to the original grantors of that company, and that they had the power to convey a good title to the appellant. There is no evidence of any intention to abandon the right of way. To constitute such an abandonment there must not only be non-user but an intention to abandon. (*Stannard* v. *Aurora, Elgin and Chicago Railroad Co.* 220 Ill. 469; *Durfee* v. *Peoria, Decatur and Evansville Railway Co.* 140 id. 435.) In the latter case the railway company took up the rails and ties over the place in controversy and failed to occupy it for nine or ten years but without an intention to abandon it, and it was held that there was no abandonment. Here the railroad company was unable to construct its railroad within ten years after filing its articles of association, but there is no evidence that it ever ceased its efforts to procure its construction or intended to do so. The sale of the right of way was not an abandonment but was an attempt to secure the application of the right of way to railroad purposes. It is immaterial that the particular corporation was unable to build the railroad. The right of way cannot be said to have been abandoned so long as the original grantee or its grantees are occupying it for railroad purposes." This language must be read in connection with the whole opinion and with reference to the questions involved in that case. In referring to the rights of the State in regard to the *ultra vires* acts of a corporation as distinguished from the rights of third persons having no interest in the subject matter, we also stated in that opinion: "Admitting that the conveyance by the Toledo, St. Louis and New Orleans Railroad Company was beyond the corporate powers of that corporation, the law does not permit third persons having no interest in the corporation or its trust to dispute the validity of its conveyance. The *ultra vires* acts

of the corporation may be objected to by the State, the corporation, its stockholders or creditors, or the persons with whom the *ultra vires* transactions are had, but not by third persons having no interest in the subject matter. Railroad corporations have power, under certain circumstances, to make sales and conveyances of real and personal property. Whether any particular conveyance is in excess of this power is a question which concerns only the corporation itself, the State, or those persons having some interest or title in the corporation or the property involved. Where a corporation has power to hold real estate under any circumstances or for any purpose, its title cannot be questioned by any person except the State. * * * Only the sovereign can object to a conveyance to a corporation incompetent by its charter to take the title to real estate. It is valid until assailed in a direct proceeding instituted for that purpose." This decision cannot be construed, as contended, as holding that this transfer cannot be held in *quo warranto* proceedings to be in violation of said section 26 of the Railroad Incorporation act. The opinion plainly indicates that the State could by *quo warranto* proceedings question whether the Toledo Company had exceeded its charter powers in making this transfer.

It is contended that even if it be held that respondents have exceeded their charter powers the judgment is not proper. The court is not concerned in this proceeding with the title to the real estate involved. The only question involved is the right of the Toledo Company to transfer the whole of its located right of way and its franchises to another railroad company and the right of the Gulf Lines Company to purchase and receive the same, and the right of either of these companies to exercise its franchise by holding this right of way for the purpose of constructing a railroad thereon after the expiration of the statutory period of ten years. The judgment of the court should have been to oust both respondents from exercising the privileges and

franchises of constructing a railroad on said right of way between East Carmi and Brookport.

The judgment of the circuit court is reversed and the cause is remanded, with directions to enter judgment in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

---

(No. 11426.—Judgment affirmed.)
THE PEOPLE *ex rel.* Ezra Patterson *et al.* Plaintiffs in Error, *vs.* F. E. FIFER *et al.* Defendants in Error.

*Opinion filed October 23, 1917—Rehearing denied Dec. 5, 1917.*