STATE OF MISSOURI on information of ROY MCKITTRICK, Attorney General, Relator, v. AMERICAN COLONY INSURANCE COMPANY ET AL.—80 S. W. (2d) 876.

Court en Banc, February 7, 1935.

408

*Roy McKittrick*, Attorney General, and *Gilbert Lamb*, Assistant Attorney General, for relator.

*Robert J. Folonie, E. R. Morrison* and *Homer Berger* for respondents; *Ragland, Otto & Potter* and *Igoe, Carroll, Higgs & Keefe* of counsel.

412

416

ELLISON, J.—This is an original proceeding in the nature of *quo warranto* instituted by the Attorney General. The action is directed against seventy-four stock fire insurance companies, which are alleged to be usurping corporate franchises and privileges, in that they have since June 1, 1930, through common design and by concerted action, been collecting from their policyholders in Missouri rates for fire and windstorm insurance 16⅔ per cent in excess of the lawful rates approved by the State Superintendent of Insurance. The alleged excessive part of the rates, as collected, is being impounded. The information does not ask that the companies be ousted, but prays that they be fined and prohibited from collecting the excessive rates, and that an order be made for the distribution of the funds impounded. A dismissal has been entered as to three of the companies, and three have defaulted. The remaining sixty-eight companies have filed separate answers and hereinafter sometimes will be referred to as respondents.

The 16⅔ per cent excessive charge complained of is in fact an increase in rates made and promulgated by the insurance companies. The statute, Section 5864, Revised Statutes 1929, says such rates shall not be raised until the approval of the State Superintendent of Insurance has been obtained. In this instance the superintendent did not approve the increase but denied it. However, the insurance companies immediately instituted a proceeding in the Circuit Court of Cole County to review the order of the superintendent, under Section 5874, Revised Statutes 1929. The review proceeding is still pending in that court and throughout the pendency thereof the court has permitted, indeed, ordered the companies to collect and impound the disputed rate increase, awaiting a final decision on whether the rates shall be raised or not. The review statute, Section 5874, above referred to, does permit the collection and impounding of the disputed portion of an insurance rate where the Superintendent of Insurance has ordered a rate *decrease* and that order is attacked in a review proceeding, but is silent as to the impounding of a rate *increase*. The ultimate question in this case is whether the collection and impounding of the rate increase with the sanction of the circuit court, in view of the foregoing statutes, Sections 5864 and 5874, is an act such as makes the companies amenable to this *quo warranto* proceeding.

For a proper understanding of the case a fuller statement of the facts is necessary. The statement which follows is substantially as contained in the report of HON. J. AUSTIN WALDEN, Special Commissioner appointed by this court to take evidence in the cause and to report his conclusions of law and findings of fact. In October, 1922, the Superintendent of Insurance ordered a ten per cent reduction in the rates charged by stock companies for fire and windstorm insurance in Missouri. A large number of the insurance companies

filed a petition in the Circuit Court of Cole County for review of that order, as the then statute permitted, Section 6284, Revised Statutes 1919. Protracted litigation followed in this court and the Federal courts as a result of which the order of the Superintendent of Insurance was upheld. [Aetna Insurance Co. v. Hyde, 315 Mo. 113, 285 S. W. 65; Id., 273 U. S. 681, 71 L. Ed. 837, 47 Sup. Ct. 113; Id. 275 U. S. 440, 72 L. Ed. 357, 48 Sup. Ct. 174; Id. 34 Fed. (2d) 185; National Fire Ins. Co. v. Thompson, 281 U. S. 331, 74 L. Ed. 881, 50 Sup. Ct. 288.] In August, 1929, at the conclusion of the litigation, the insurance companies under protest put into effect the rates called for by the aforesaid reduction order made seven years theretofore.

But about four months later on December 30, 1929, acting through the Missouri Inspection Bureau of St. Louis, they published the rate increase of 16⅔ per cent involved in this case, to become effective February 1, 1930, notifying the Superintendent of Insurance and requesting his approval thereof, as required by said Section 5864, Revised Statutes 1929. Pending his investigation of the proposed new rates the Superintendent of Insurance on four several occasions requested that the effective date thereof be postponed and in obedience to that request the date was set forward successively from February 1, to March 1, to April 1, to May 1, to June 1, 1930. On May 28 the superintendent disapproved the rate increase. On the same day the Missouri Inspection Bureau notified the agents of the several companies to collect the increased rates, beginning June 1. And on June 5, the proceeding to review the order of the superintendent denying the rate increase was filed by most of the respondents (some came in later) in the Circuit Court of Cole County, as authorized by said Section 5874.

When the petition for review was filed the circuit court entered an order reciting that *by statute* the institution of the review proceeding operated as a stay and by law required the impounding of amounts collected on the rate increase and the deposit thereof with the Superintendent of Insurance; and it was ordered that the companies report to and deposit with the superintendent the amount of such collections quarterly, beginning September 15, 1930. Thereafter, for a period of more than sixteen months the Superintendent of Insurance made no objection to the impounding order, but, to the contrary, on five several occasions moved for various modifications thereof in a manner conceding its validity. The record is clear that during this time the superintendent, the respondent companies and the circuit court all were proceeding on the theory that the statute, Section 5874, contemplated the collection and impoundment of the disputed portion of the denied rate increase during the pendency of the review action.

Two of the aforesaid modified impounding orders entered by the circuit court, dated March 5, 1931, and January 28, 1932, had to do with the securing and investment of the impounded funds by the depository banks and the Superintendent of Insurance. The insurance companies were not satisfied with these orders so on May 30. 1932, one of the respondents, the North British & Mercantile Insurance Company, instituted an original proceeding in mandamus in this court against the Superintendent of Insurance, charging mainly and in substance and effect, that said two impounding orders (or the acts of the parties in obedience thereto) did not comply with the requirements of Section 5874 respecting such impoundments The superintendent made return to our writ asserting that the two orders were in substantial compliance with the statute, as nearly as was possible in view of the financial depression. Here again both parties conceded Section 5874 required an impoundment, and the question at issue was whether its requirements had been met.

The opinion of this court in the mandamus case was delivered August 5, 1932, and is reported in 330 Mo. 1146, 52 S. W. (2d) 472 On the issues raised by the parties it held mandamus would not lie. But the opinion went further and raised and decided a question not presented by either of the parties, contrary to their own trial theories. It held that Section 5874 makes no provision for impounding a rate *increase* but authorizes only the collection and impounding of funds representing a rate of *decrease* during the pendency of a proceeding to review the superintendent's order therefor.

On August 5, 1932, the day that the foregoing opinion of this court in the mandamus case was delivered, and evidently in an effort to follow the same, the Superintendent of Insurance filed a motion in the rate review proceeding pending in the Cole County Circuit Court. praying that its order of June 5, 1930, and all subsequent modifications thereof, be set aside; and that the respondents be enjoined from collecting the same. Thus, for the first time since the institution of the review proceeding in June, 1930, did the Superintendent of Insurance challenge the right of the circuit court to order the collection and impoundment of the 16⅔ per cent rate increase.

The circuit court held the motion under advisement for more than four months until December 30. 1932, when it was overruled. Early in January, 1933, the banks in which the impounded funds had been deposited filed a motion or petition praying that the Superintendent of Insurance be restrained from withdrawing them for investment. On January 21, 1933, the circuit court, ruling on that motion, entered a long order which recited that all previous orders authorizing the impounding of the rate increase had been made in an effort to comply with said Section 5874, Revised Statutes 1929, under the view that that section was controlling on the court; but that it now appeared from the decision of this court in the mandamus proceed-

ing, supra, that the provisions of said Section 5874 are without application, and that it (the circuit court) independent of the statute had inherent power to impound said funds and to provide for their custody, preservation and disposition. Accordingly it was ordered that the Superintendent of Insurance pay into court the funds impounded with him, and that the respondent insurance companies thereafter pay into the registry of the court, quarterly, the disputed rate increases collected by them. All the impounded funds have since been so held, and are held now on the theory expressed in said order of January 21, 1933, that the circuit court in the review proceeding has inherent power, independent of the statutes aforesaid, to order the collection and impoundment of the rate increase *pendente lite.*

Three days later, on January 24, 1933, the present Attorney General of Missouri, HON. ROY MCKITTRICK, instituted the case at bar by filing his information in the nature of a *quo warranto* in this court. The information ignores the fact that the respondent insurance companies all along have acted under orders of the circuit court in collecting the 16⅔ per cent rate increase and simply charges that they have, pursuant to a common design and purpose, wrongfully and arbitrarily undertaken to increase their insurance rates, and to collect the rate increase, all of which it is alleged constitutes a usurpation and abuse of their corporate powers, franchises and privileges.

The answers of the several respondents, however, set up the pendency of the rate review proceeding in the Cole County Circuit Court and the impounding orders made therein with the acquiescence of the relator and the Superintendent of Insurance, over a period of more than two years; and aver he is thereby estopped to question the same in this *quo warranto* proceeding. It is further alleged that these collections come from hundreds of policies in small amounts which will be wholly lost to the respondents (if the rate review proceeding be finally decided in their favor) unless such collections be made and impounded as premiums mature, because collection at the end of the litigation would require a multiplicity of suits and the expense would exceed the amount involved. On this point the special commissioner found the average amount of rate increase collected on each policy in this State issued by the respondents from the time the impoundment was first ordered in June, 1930, to March 15, 1933, was $3; and that during that period of three years, nearly, the whole amount of rate increase collected was about $900,000. From this it appears approximately 300,000 policies have been affected by the collection of the rate increase, in an average amount of about $1 per year each. The answers further aver that a denial of the right to collect and impound said rate increase *pendente lite* would inflict irreparable damage upon the respondents, be confisca-

tory, and deprive them of their property without due process of law in .violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States.

In their answers the respondents further urge that the Cole County Circuit Court by and through the rate review proceeding has acquired jurisdiction of the whole controversy and had and has inherent power to order the collection and impounding of the rate increase *pendente lite;* that the validity of the order denying the rate increase and the title to the $900,000 of impounded funds are there directly at issue; and that this court ought not to interfere by the extraordinary writ of *quo warranto.*

As showing the scope of the issues in the rate review proceeding the respondents' answers in the instant *quo warranto* proceeding set out much of what they had alleged in their petition in the review proceeding. From this and the petition itself, which was admitted in evidence before the special commissioner, it appears that among other issues tendered in the proceeding in the circuit court is one that the 1922 rates, to which the respondents are held by the superintendent's denial of their proposed 16⅔ per cent rate increase, are confiscatory and compel them to do business at an actual loss; that the proposed 16⅔ per cent increase in rates is not more than enough to provide a fair and reasonable return; that a denial thereof would deprive them of their property without just compensation and without due process of law, in violation of Section 30, Article II, Constitution of Missouri, and Section 1, Fourteenth Amendment of the Constitution of the United States. The petition prays that during the pendency of the rate review proceeding the order of the superintendent denying the rate increase be suspended, that the respondents be permitted to collect the increased rate, and that proper impounding orders be made if the court deems them proper.

Many other issues of fact and law are raised by the respondent insurance companies in the rate review proceeding and in their answers and briefs in the instant *quo warranto* proceeding; but we think it unnecessary to go into these other questions except as they may be touched upon in the course of this opinion.

I. The 16⅔ per cent rate increase was and is being collected by the respondent insurance companies under impounding orders made by the Cole County Circuit Court in the review case. This *quo warranto* proceeding is an attack upon those orders. The law is well settled in this State that *quo warranto* is not a writ for the correction of errors and cannot be utilized as a substitute for an appeal. [Ferris on Extraordinary Legal Remedies, sec. 109, p. 132; State ex inf. Mayfield v. Dougan, 305 Mo. 383, 395, 264 S. W. 997, 999.] Absent a charge of fraud in the procurement of the impounding orders—and the information makes no such charge—the sole question is whether the circuit court exceeded its *jurisdiction* in making them in

the review proceeding. [State ex inf. Talbott v. Mississippi & Fox River Drainage Dist., 292 Mo. 696, 707, 238 S. W. 446, 449; State ex inf. McAllister v. Albany Drainage Dist., 290 Mo. 33, 62, 234 S. W. 339, 343; State ex inf. McAllister v. Norborne Land Drainage Dist. Co., 290 Mo. 91, 129, 234 S. W. 344, 347; State ex inf. Killam v. Colbert, 273 Mo. 198, 208, 201 S. W. 52, 54; State ex inf. Crow v. Fleming, 158 Mo. 558, 563, 59 S. W. 118, 119; People v. Wells, 291 Ill. 584, 586, 126 N. E. 575.]

■ II. The learned Attorney General maintains the circuit court did not have jurisdiction, either express, implied or inherent, to make the impounding orders; that the full range of its jurisdiction in such matters is fixed by Sections 5864 and 5874, heretofore cited, and that these two statutes not only fail to grant but the former expressly and the latter impliedly withholds such power from the circuit court in a rate review proceeding. Section 5864 provides that any insurer,

"Shall be permitted to change or lower its rate or rates whenever it sees fit, *provided* that rates shall not be raised until at least ten days notice has been given by the insurance company to the superintendent of insurance *and his approval obtained* but in making a change, it shall be required to make the change in writing on its public record, and to immediately give notice thereof to the superintendent of insurance." (Italics ours.)

Under the plain terms of this section there can be no doubt about the fact that an increased rate cannot become effective until approved by the Superintendent of Insurance, as between the insurer, the superintendent and the public, in the ordinary situation. But whether this provision operates as a limitation on the power of the *courts;* whether even though the superintendent's denial of the rate increase were capricious and confiscatory (as is alleged in the review proceeding) the statute would deprive a reviewing court of jurisdiction to suspend the order and to permit the collection and impounding of the rate increase *pendente lite,* is another question.

Section 5874 is as follows. In setting it out we have divided it into two paragraphs, italicizing the parts stressed by the parties in argument, and have omitted the last ten lines, which do not bear on the question before us. It is as follows:

"The orders and directions of the superintendent of insurance, together with his findings or determinations of facts upon which such orders or determinations are founded, shall be reviewable *by a proper action* in the courts, and upon such review *the entire matter shall be treated and determined de novo,* but the burden of proof as to the unreasonableness or injustice of any order made by the superintendent of insurance shall rest upon the party or company, or companies, *appealing* from such order. The court shall have au-

thority *to sustain, set aside or modify* the orders and directions under review.

"During the pendency of such action or review, the orders and directions of the superintendent of insurance, as *to reduction of rates,* shall be suspended, but all such insurance companies shall, during the pendency of such action or review, deposit with the superintendent of insurance on all policies issued or renewed after the date of such order or direction, and until the final determination of such action, an amount equal to the difference between the rates fixed by the superintendent in his order and those in effect prior thereto, such funds to be held by the superintendent of insurance to await the result of such review, and in the event the orders and directions of the superintendent be set *aside,* such funds shall be returned *to the companies pro rata,* and in the event his orders and directions shall be sustained, then such funds shall be turned over to the policyholders *pro rata."*

In the North British & Mercantile Insurance Company case, 330 Mo. 1. c. 1154, 52 S. W. (2d) 1. c. 475, which we shall hereafter refer to as the mandamus case, this court analyzed the second paragraph of Section 5874 set out above, and, as we have already stated, held the provisions thereof authorizing the collection and impounding of the disputed portion of insurance rates apply only to the review of rate *reduction* orders. And we will say here we think there can be no question about the correctness of that conclusion, notwithstanding the fact that both parties to this cause and the circuit court for more than two years acted on the contrary assumption that the statute also covers impoundments during rate *increase* review proceedings. This second part of the section deals only with orders directing a rate reduction and is wholly silent as to the collection and impounding of a denied rate increase. But whether, as the relator contends, under the maxim *expressio unius est exclusio alterius* the mention of the one excludes the other—in other words, whether the section by implication forbids the collection and impounding of a denied rate increase and takes such power away from the courts altogether in a rate review proceeding, likewise is another question.

The learned Attorney General asserts our decision in the mandamus case, supra, settles that question also in harmony with his contention. And it is true the opinion, after ruling the provisions in Section 5874 with reference to impoundments apply only in rate decrease review proceedings, and after referring to the fact that Section 5864 declares a rate increase shall not become effective until the approval of the Superintendent of Insurance has been obtained, goes on to say, 330 Mo. 1. c. 1155, 52 S. W. (2d) 1. c. 476:

"The rate cannot be increased without the superintendent's approval. . . . In the case of an increase of the rate the prevailing rate should obtain until the increase is authorized. . . . It is true the Superintendent of Insurance cannot fix the rates;

he can only approve rates; nevertheless insurance companies cannot arbitrarily determine rates, fix and collect them without his approval. The insurance companies therefore had no right to collect the increase. The fund has been accumulated without authority of law. Policyholders could not be forced to pay rates 16⅔ per cent above the approved rate. The relator having defied the restrictions of the rating statute now seeks its protection for the fruits of that violation.''

But immediately following, the opinion continues by saying this further:

''Nevertheless the companies have put in effect and have collected those rates as increased. The circuit court has authorized the payment of the difference between those rates and the former rates to the Superintendent of Insurance. He has received and is still receiving the accumulations of those excess rates and he has that fund in his custody. The trial court has inherent power to protect that fund. It is not bound by the provision of Section 5874 which applies only to a decrease of rates. The court may provide for the protection of the fund in any way which to the court seems feasible for the purpose.''

The Attorney General stresses the language in the excerpt first set out above, and says the decision holds the collection and impoundment of the 16⅔ per cent rate increase was in violation of the statutes aforesaid, and therefore in effect requires it to be refunded to policyholders. The respondents emphasize the second quoted paragraph and insist the ruling was that independent of the statutes the circuit court has inherent power to order the collection and impounding of the rate increase. We think the decision in the mandamus case does not go as far as either of the parties asserts. The language first quoted above says the rate increase had been collected and the fund accumulated without authority of law; and that policyholders could not be forced to pay a rate 16⅔ per cent above the approved rate. This, perhaps, amounts to a declaration that the court had neither authority under the statutes nor inherent power to order the collection and impoundment of the rate increase even though both parties consented to the collection thereof and agreed that the statute contemplated an impoundment of some sort (for the record showed they did agree that far). But the second excerpt quoted goes on to say that even though the rate increase had been wrongfully collected, nevertheless the court had inherent power to protect the fund thus built up in any manner that seemed feasible and that it was not bound by the provisions in Section 5874 with reference to impoundments, since they apply only to a decrease in rates. This appears to be at least a tacit validation of the impounding orders involved in the case, which contemplated the investment and continued impoundment of the fund; and does not sustain relator's contention that

the opinion held the court had no jurisdiction of the money except to refund it to policyholders.

But this holding was *obiter dictum*. No question had been raised. briefed or argued by the parties concerning the inherent power of the court, or regarding the jurisdiction of the court to hold the impounded money. Neither had any issue been made as to whether Section 5874 contemplated the collection and impoundment of the rate increase: both parties had all along proceeded on the theory that it did. And so, while the opinion had the concurrence of all the judges of this court we are not concluded by it, and shall proceed to examine again the questions presented—this time with the issue directly turning on them, and with the aid of the special commissioner's report and the copious briefs filed by both parties.

■ The part of Section 5874 most directly bearing on the scope of the jurisdiction of the circuit court in a review proceeding received little attention in the mandamus case. It is the part we have set out above as the first paragraph of the section. It says the orders of the Superintendent of Insurance shall be reviewable "by a proper action in the courts" where "the entire matter shall be treated and determined *de novo*." The burden of proof is placed on the party "appealing," and the court is authorized "to sustain, set aside or modify the orders and directions under review." From this it will be seen the form of the action is not prescribed, nor the scope thereof restricted. The jurisdiction conferred is as broad as any that equity could exercise in the same circumstances. The court sits like a chancellor, not as the judge of a law court directing the submission of issues of fact to a jury. Without doubt this part of the statute is broad enough to permit the petition for review to take the form of a bill in equity praying also for relief *pendente lite*.

Another point of prime importance made by respondents, which was not considered in the mandamus case, is that statutes ought to be construed, if possible, so as to avoid the effect of unconstitutionality; and that if Sections 5864 and 5874 do deny to an insurer the right to relief *pendente lite* as against an order of the Superintendent of Insurance requiring a rate decrease or denying a rate increase, which is confiscatory in its effect, they violate the first section of the Fourteenth Amendment of the Constitution of the United States.

We think this contention is sound. The rule of construction invoked by respondents is well established. In State v. Ward, 328 Mo. 658, 664, 40 S. W. (2d) 1074, 1076, the late lamented FITZSIMMONS, C., said: "It is a fixed rule, scarcely needing restatement, that no legislative enactment should be declared unconstitutional unless it appears very clearly so, and every reasonable intendment should be made to sustain it." Likewise, in State ex rel. Columbia Telephone Co. v. Atkinson, 271 Mo. 28, 42, 195 S. W. 741, 745, the rule is said to be that if the act be "fairly susceptible of two or more construc-

tions, that interpretation will be adopted which will avoid the effect of unconstitutionality, even though it may be necessary, for this purpose, to disregard the more usual or apparent import of the language employed.'' [See, also, Black on Interpretation of Laws (2 Ed.), sec. 41, p. 113.] Some authorities say ''courts are bound to go to the very verge of construction to sustain the constitutionality of statutes,'' 12 Corpus Juris, sec. 220, page 790; and this rule applies in making state statutes harmonize with the Constitution of the United States as well as with the Constitution of the State. [59 C. J., sec. 616, p. 1038; Overton v. State, 7 Okla. Cr. 203, 205, 123 Pac. 175, 176 (error dismissed 235 U. S. 31), 59 L. Ed. 112, 35 Sup. Ct. 14.]

That Sections 5864 and 5874 do violate the Fourteenth Amendment of the United States Constitution if they cut off the right to interlocutory relief as against a confiscatory order of the Superintendent of Insurance is established by a number of Federal decisions cited by respondents as follows: Porter v. Investors' Syndicate, 286 U. S. 461, 469, 76 L. Ed. 1. c. 1231, 52 Sup. Ct. 1. c. 620; Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U. S. 196, 201, 68 L. Ed. 975, 979, 44 Sup. Ct. 553, 555; Prendergast v. N. Y. Telephone Co., 262 U. S. 43, 49, 67 L. Ed. 853, 858, 43 Sup. Ct. 466, 469; Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 293, 67 L. Ed. 659, 662, 43 Sup. Ct. 353, 354; Cumberland Tel. & Tel. Co. v. Railroad and Pub. Util. Comm., 287 Fed. 406, 416 (9); Augusta-Aiken Ry. & Elec. Corp. v. Railroad Comm., 281 Fed. 977, 980; Love v. A., T. & S. F. Ry. Co., 185 Fed. 321, 327.

In the foregoing cases relief *pendente lite* was granted by injunction. The learned special commissioner in his report acknowledges this to be the law saying: ''We do not question that (an) insurance company may, under proper circumstances, apply to a federal court for an injunction to protect it against the denial of the superintendent of an increase in rates necessary to make its rates compensatory, and that such court can protect it in the collection of a compensatory rate.'' And again, a little later speaking of the instant controversy, he says: ''Respondents, by appropriate action in the Federal court, could have procured an injunction under which the increased rate could have been collected pending the final termination of the matter in that court, upon a preliminary showing that the order of the superintendent was confiscatory.''

But, while conceding such power to the Federal courts, the special commissioner concludes our State courts cannot exercise the same power in a review proceeding because of the provision in Section 5864, supra, that rates shall not be increased until the approval of the Superintendent of Insurance has been obtained. It is the view of the commissioner that this statutory prohibition renders the reviewing State court powerless to suspend *pendente lite* an order of

the Superintendent of Insurance refusing a rate increase, however confiscatory that order may be, and that the insurer is driven to the Federal courts for relief. The commissioner further holds the facts that the statute prevents an insurer from obtaining relief *pendente lite* in the State courts, does not make it conflict with the Federal Constitution, since injunctive relief can be obtained in the Federal court. The Attorney General concurs in these views, save for several other propositions to which we shall presently refer.

We cannot agree with the relator's contention on this point. If by force of Section 5864 the approval of the Superintendent of Insurance always is a *sine qua non* the statute is as binding on the Federal courts as it is upon the courts of this State. The statute contains no exception or reservation in favor of Federal courts. As we have attempted to show above, the jurisdiction conferred by Section 5874 upon our State circuit courts in a review proceeding is unrestricted. They are courts of general original, civil jurisdiction, and are created by the Constitution, not by the General Assembly. [Sec. 22, Art. VI, Constitution of Missouri; C., B. & Q. Ry. Co. v. Gildersleeve, 219 Mo. 170, 118 S. W. 86.] They have jurisdiction of cases arising under the Constitution of the United States. [Ex parte Gounis, 304 Mo. 428, 438, 263 S. W. 988, 990.] Their powers in a review proceeding under the Insurance Rating Act are as broad as any that a Federal court could exercise in the same situation. If, therefore, the Federal courts have power to grant injunctive relief *pendente lite* on a preliminary showing that the denial of an increased rate is confiscatory a State circuit court in a review proceeding can do likewise. And of the statutes, Sections 5864 and 5874, one of two things must be said: either on a proper construction they do not withhold that power from the courts, State or Federal; or, if and insofar as they attempt to do so, they are unconstitutional.

We think the two statutes admit of a construction which will save them from unconstitutionality. While Section 5864 does say rates shall not be raised until the approval of the Superintendent of Insurance has been obtained, that evidently refers to the establishment of rate increases in ordinary course, the subject being dealt with, and not to the power of the courts over rates *pendente lite*. The section says nothing about any court proceedings, nor does the article in which it appears make any such provision up to that point or until ten sections later, by Section 5874, which authorizes the reviewing court to modify or set aside a denial of a rate increase, in a "proper action." If, in the exercise of that jurisdiction, the court finally determines the denial is confiscatory, it must necessarily base its conclusion on the facts as they existed at or prior to the time of the denial (Aetna Ins. Co. v. Hyde, 315 Mo. l. c. 127, 285 S. W. l. c. 68); and it is not to be thought the lawmakers intended that

throughout the review which, with appeals and related proceedings, may be protracted for several years, the court should be powerless to suspend an order denying a rate increase as being prima facie confiscatory.

Neither does the fact that Section 5874 provides only for the collection and impounding of the disputed portion of an insurance rate in a rate *decrease* review proceeding, imply that a reviewing court never shall have power to order impoundment of a rate *increase pendente lite*. As a matter of fact, the section does not deal with judicial impoundments at all. It says that during the pendency of a review proceeding the orders of the superintendent as to reduction of rates shall be suspended, and that the insurance companies shall deposit with the Superintendent of Insurance on all policies issued or renewed after the date of the reduction order, and until the final determination of the review proceeding, the amount of the reduction, the fund so created to be held by the superintendent awaiting the decision of the controversy. In other words, the section calls for the suspension of a rate reduction order and the collection and impoundment of the disputed portion of the rate *always and automatically*, wholly independent of the courts. The money is deposited with the superintendent and handled and disbursed by him as the statute specifies without any court order whatever.

Furthermore, prior to the enactment of the present Section 5874 the statute it repealed, Section 6284, Revised Statutes 1919, provided that during the pendency of a review proceeding the insurer "shall not charge any rate or premium in excess of that fixed. by the superintendent of insurance." This applied to proceedings involving rate increases as well as to those concerned with rate reductions. [State ex rel. Waterworth v. Harty, 278 Mo. 1. c. 692, 213 S. W. 1. c. 446.] That the section was regarded as being of doubtful constitutionality is indicated by the fact that when the rate reduction of 1922, heretofore mentioned, was ordered, the Superintendent of Insurance stipulated with the insurance companies that the question of the constitutionality of the statute should not be raised, and that during the pendency of any proceeding to review the reduction order the former rates should still be collected by the insurers and a refunding bond given to secure the return of the disputed portion of the premiums if the order should be upheld. [State ex rel. Hyde v. Westhues, 316 Mo. 457, 466, 290 S. W. 443, 445.] And at the next session of the General Assembly Section 6284 was repealed and the present statute enacted. [Laws 1923, p. 234.]

But the fact particularly to be noted is this. The old Section 6284, Revised Statutes 1919, provided, as we have just stated, that during the pendency of *any* review proceeding a rate of premium in excess of that fixed by the Superintendent of Insurance *never* should be charged, either in a rate-reduction case or a rate-increase

case. The present statute, Section 5874, omits that prohibition ap-plying to both classes of cases, and substitutes therefor a provision of opposite nature applying to rate *reduction* proceedings only, which says that during the pendency thereof the rate-reduction order *always* shall be suspended, the former rate collected and the disputed part impounded with the Superintendent of Insurance. There is no men-tion of rate *increase* review proceedings in that connection. The prohibition in the old statute governing the rates to be charged dur-ing their pendency is dropped out. In the face of this fact the maxim *expressio unius est exclusio alterius* can hardly be resorted to to put it back. This maxim is merely a rule of construction. As stated in Black on Interpretation of Laws (2 Ed.), page 219, section 72, ''it is not to be taken as establishing a Procrustean standard to which all statutory language must be made to conform. On the contrary, it is useful only as a guide in determining the probable intention of the Legislature.''

In this connection, however, the relator makes two further points. He says, first, that the respondent insurance companies are foreign corporations doing business in this State by grace, under licenses or certificates that they have complied with the requirements of the insurance laws of this State, which the statute requires to be renewed annually, Section 5892, Revised Statutes 1929; and that the two statutes here involved, Sections 5864 and 5874, have been a part of our law for many years (the former since 1915 and the latter since 1923) during which time the respondents have accepted renewals of their certificates annually. It is relator's position that in view of these facts respondents cannot complain of the statutes, however onerous or even impossible may be the conditions they impose. citing State ex rel. Atlantic Horse Ins. Co. v. Blake, 241 Mo. 100, 106, 144 S. W. 1094, 1095, and other cases. We can see no merit in this contention. Certainly the fact that the respondent insurance companies are doing business in this State as licensed foreign cor-porations cannot deprive them of the right to disagree with the Superintendent of Insurance and the Attorney General on the proper construction of the statutes. The statutes cannot have one meaning as applied to foreign companies and another as to domestic com-panies. Indeed the Attorney General in his reply brief says: ''The Rating Act applies to all fire insurance companies alike, domestic and foreign.'' At least one of the respondents is a Missouri corporation. We think the respondents may properly raise the questions they are presenting.

There is no more substance in the other point made by the relator, which is that the respondents cannot assail Sections 5864 and 5874 on the ground of unconstitutionality, for the reasons given in the last paragraph and also because they elected to proceed under them in bringing their review proceeding in the circuit court. As we have

already stated, the respondents are not contending the statutes are unconstitutional: they are asserting the opposite, that they are *not* unconstitutional if properly construed. Respondents raise only well recognized rules of construction, not constitutional questions. On consideration of the whole matter we conclude that there is nothing in either Section 5864 or 5874, Revised Statutes 1929, to prevent a state court in a statutory review proceeding from granting relief *pendente lite* against a denial of an insurance rate increase which prima facie appears to be confiscatory.

III. The learned Attorney General, while not agreeing with our conclusion, just stated, maintains further that even if a state court in a review proceeding can grant relief *pendente lite* as against the denial of a rate increase claimed to be confiscatory, it can do so only by injunction, and that in the instant review case the respondent insurance companies did not pray for a preliminary injunction or adduce preliminary proof that the denial of the rate increase was confiscatory; and the circuit court did not even purport to grant an injunction, but simply made impounding orders. The respondent insurance companies answer there was no occasion for them to seek injunctive relief, because the Superintendent of Insurance did not threaten to enforce his denial of the increase and to hold them to the old rate, but, on the contrary, without objection went into the circuit court from time to time requesting certain modifications of the original impounding order which recognized its validity and signified his acquiescence therein. That is true—up to the time our opinion in the mandamus case was delivered. But it will be remembered that from then on the superintendent did object. Then there is the further question as to whether he could legally waive. or consent to, the collection of an increased rate which he had disapproved. This question will be considered later in this opinion.

But the main contention of the respondent insurance companies is that the circuit court did have inherent power to collect and impound the disputed portion of the rate increase during the pendency of the review action, and that it was not necessary for it to exercise that power by way of injunctive process. The greater part of their 278 page brief is devoted to a discussion of this proposition Scores of cases and texts are cited. As we understand respondents' contentions they are based on two alternative theories.

The first is that the court proceeding provided for by Section 5874 is essentially an *appeal* from the order of the Superintendent of Insurance under review. This theory is based on the facts that the statute declares the court shall treat and determine the entire matter *de novo*, and may set aside or modify the order, and also particularly on the fact that the party instituting the review proceeding is referred to by the section as the party "appealing." Re-

spondents maintain that if and since the proceeding is an appeal, the circuit court has inherent power to grant a *supersedeas* suspending the operative effect of the order, notwithstanding the statute makes no provision therefor. Among the citations on this point are 3 C. J., sec. 28, p. 314, sec. 1394, p. 1272, sec. 1408, p. 1286; 20 Ency. Pl. & Pr., p. 1237 et seq.; Mo. Pac. Ry. Co. v. Atkinson, 17 Mo. App. 484, 496; Parker v. H. & St. J. Railroad Co., 44 Mo. 415, 418; American Brewing Co. v. Talbot, 135 Mo. 170, 36 S. W. 657; Hudson v. Smith, 9 Wis. 122; Hart & Hoyt v. Mayor, etc., of Albany (N. Y.), 3 Paige, 381, 383; In re Epley, 10 Okla. 631; Penn. Railroad Co. v. National Docks & N. J. J. C. Ry. Co., 54 N. J. Eq. 647.

We are compelled to disagree with respondents on this point for the reason that the review proceeding provided for by Section 5874 is not, in our opinion, an appeal but is an independent original action. As stated in 2 Ency. Pleading and Practice, section 9, page 25, "To be appealable a decision must be an exercise of judicial power. Where a judge or court acts in an administrative and ministerial capacity no appeal will lie from such action." [See. also, 3 C. J., sec. 129, p. 372.] The Superintendent of Insurance is not a court, of course, and in the making of orders affecting insurance rates he acts administratively or legislatively and not judicially. The statutory review in the circuit court therefore is not an appeal. It is an original court proceeding authorized by the statute and based on the alleged wrongful action of the superintendent. Such was the ruling of the United States Supreme Court on closely analogous facts in United States v. Ritchie, 58 U. S. 525, 532, 15 L. Ed. 236, 238.

In that case certain private land claims in California had been determined adversely to the United States by a Board of Commissioners created by a Federal statute. The statute provided that the filing of a transcript of the proceedings of the Board of Commissioners in the District Court of the United States by either party should operate as an *appeal*. The government, following this procedure, brought the case before the United States District Court, which upheld the decision of the Board of Commissioners. An appeal was then taken to the United States Supreme Court. There one of the objections urged by the Attorney General was that the Federal statute authorizing a review by the District Court of the Decision of the Board of Commissioners was unconstitutional because the Board of Commissioners was not a judicial tribunal from which an appeal to a court would lie. The Supreme Court of the United States said:

"But the answer to the objection is, that the suit in the District Court is to be regarded as an original proceeding, the removal of the transcript, papers, and evidence into it from the Board of Commissioners being but a mode of providing for the institution of the suit in that court. The transfer, it is true, is called an appeal; we

must not, however, be misled by a name, but look to the substance and intent of the proceeding. The District Court is not confined to a mere re-examination of the case as heard and decided by the Board of Commissioners, but hears the case *de novo*, upon the papers and testimony which had been used before the board, they being made evidence in the District Court; and also upon such further evidence as either party may see fit to produce.'' [See, also, City Ry. Co. v. Beard, 283 Fed. 313, 318.]

The second alternative theory of respondents is that even though the review action be regarded as an original proceeding, nevertheless the circuit court in the exercise of its equity powers, or of common-law powers on equitable principles, had jurisdiction to suspend the order of the Superintendent of Insurance denying the rate increase, and to authorize the collection and impounding of the fund produced thereby, to the end that the subject matter of the controversy might be preserved awaiting final judgment. It is argued that relief of this character is such as may be granted under a writ of *audita querela* or a bill *quia timet*.

We are unable to see that proceedings under a writ of *audita querela* bear the slightest resemblance to anything the circuit court did in the review case here under consideration. This common-law writ was for the purpose of relieving the complainant from the wrongful effects of a judgment which could not be reached by writ of error. It was a proceeding after the judgment interposing matters of defense or discharge arising subsequent thereto, or which, though existent before the judgment, for good reason were not then available to the complainant. [6 C. J., p. 850; State ex rel. Gary Realty Co. v. Hall, 322 Mo. 1118, 1125, 17 S. W. (2d) 935, 937.] The insurance review case involved here is still pending and no judgment has been rendered therein. Respondents in drawing their analogy between the ancient writ of *audita querela* and the powers of the court in a review proceeding under Section 5874, evidently look upon the order of the Superintendent of Insurance as a *judgment* and the review action as a proceeding after that judgment. But, as we have held, the orders of the Superintendent of Insurance are not judgments.

As to the contention of respondents that the order authorizing the collection and impounding of the rate increase came within the range of the circuit court's equity jurisdiction as exercised in response to bills *quia timet*. By this branch of equity jurisprudence preventive relief is granted against anticipated future injury. Speaking of its wide and varied application Prof. Story says, 2 Story's Equity Jurisprudence (14 Ed.), section 1142, page 526:

''The manner in which this aid is given by courts of equity is of course dependent upon circumstances. They interfere sometimes by the appointment of a receiver to receive rents or other income;

sometimes by an order to pay a pecuniary fund into court; sometimes by directing security to be given or money to be paid over; and sometimes by the mere issuing of an injunction or other remedial process; thus adapting their relief to the precise nature of the particular case, and the remedial justice required by it.''

Respondents point to the foregoing and to the sections following in the same chapter of the above text, and assert that injunctive relief, appointment of receivers, sequestration of property, judicial impoundments *pendente lite* and exaction of security for the payment of money or delivery of property all are remedies belonging to the same family; and that all are administered under the same genus or head of equity jurisdiction. From this respondents reason that even if they and the trial court misconceived the proper remedy and impounding orders were entered when relief should have been granted by injunction, nevertheless that was not an excess of jurisdiction, but merely error—which cannot be reviewed by *quo warranto*.

We are unable to see that the decisions cited by respondents sustain this broad contention. Two of the cases say ''an independent action for an injunction in aid of a cause already pending, is not maintainable where adequate relief may be had by a motion in the original cause.'' [Carson v. Jansen, 65 Neb. 423, 91 N. W. 398; Hamer v. Kane, 7 Nev. 61.] Obviously they are not in point. The facts in each were that the litigant who had been defeated and taken an appeal in a cause, brought a separate injunction suit to stay execution in the case appealed; and the ruling in both the decisions, supra, was that the appellant should have moved for a *supersedeas* and given a proper appeal bond in the original case instead of bringing an independent injunction suit for that purpose.

Thompson v. M'Kim, 6 Har. & J. 302, 319, was decided in Maryland in 1825. The plaintiffs sued to recover a sum of money which they charged had been deposited with the defendant for their use. The defendant admitted receiving the deposit, but asserted it had been left with him as security for certain liabilities he had incurred for the accommodation of the depositor thereof. The plaintiff filed a motion to require the defendant to bring the money into court. The court held a preliminary hearing and entered an interlocutory order sustaining the motion. In so deciding the chancellor ruled ''an admitted, or incontrovertible state of facts, is required as the foundation of an order to bring money into court,'' but held such a state of facts had been shown. The defendant prayed an appeal from the order but the trial court denied it because the order was interlocutory. The defendant then filed application for an appeal in the Court of Appeals of Maryland and the appeal was allowed on the ground that the facts decided by the trial court in ruling on the motion were dispositive of the whole case. Also a *supersedeas* order was entered, conditioned on defendant's giving a proper appeal bond.

In McDaniel v. Stoker, 40 N. C. 274, there was a controversy over the ownership of two slaves and the court ordered sequestration of them, on the plaintiff's allegation that the defendant had little property and that there was danger he would abscond with the slaves.

Monkhouse v. The Corporation of Bedford, 17 Vesey's Chanc. Rep. 380, was an English case decided in 1810. The plaintiff claimed as a mortgagee in equity of an estate, asserting the mortgage deed had been deposited with him by a person who had paid the original mortgagee. The defendant mortgagor disputed the plaintiff's title, contending the plaintiff's assignor had paid the mortgagee with the intention of discharging the encumbrance by way of gift to the mortgagor, and not by way of purchase with the intention of keeping the encumbrance alive and constituting himself a creditor. The plaintiff having prevailed in his suit, the defendant moved for a stay of execution until six months after an appeal should be heard. The court granted the six months' stay on condition that the defendant pay the amount due on the mortgage into court, consent to the appointment of a receiver, and pay the interest and costs.

In Manufacturers Paper Co. v. Lindblom, 68 Ill. App. 539, the appellees had brought a bill of review in the circuit court to vacate a decree against them in another cause in the same court. The bill also prayed and the court granted an interlocutory injunction to restrain the sheriff from levying an execution under the decree assailed. On an appeal from this order, prosecuted by the other party, the Illinois Court of Appeals held the injunction was improperly issued and that instead the appellees should have been required to bring into the reviewing court the amount of money adjudged against them in the decree under review, or, at least, to give a good bond for the payment thereof in event the decree should stand.

The English case and the Illinois case last cited above may be authority for the proposition that on an appeal or review in chancery the moving party may be required to deposit in the reviewing court the amount adjudged against him in the decree assailed (though we do not so hold). And the Maryland case and the North Carolina case, supra, may be accepted as authority that where a controverted property or fund is in existence, the litigant in possession thereof may sometimes be required to bring the same into court, even though he is not a mere stakeholder but lays claim to the property or fund.

But we are not cited to any case holding that when no fund exists the court can *create* one and impound it by a mere order directing the collection *pendente lite* of a disputed insurance, railroad, utility or other like rate from the public without preliminary proof that the denial of the rate would be confiscatory and without requiring security for the protection of the adversary litigant and the parties interested, as in injunction cases. All the Federal decisions cited by respondents and set out earlier in this opinion, where a disputed

rate was collected *pendente lite,* are injunction cases and we think that is the only remedy open to respondents in the circumstances.

It is contrary to the spirit of our law that the court should pre-judge the very question for final decision and allow the collection of a disputed rate *pendente lite,* except upon the adduction of proper preliminary proof by the complainant and on terms protecting interests detrimentally affected thereby. Our statute, Section 1507, Revised Statutes 1929, provides that: "No injunction, unless on final hearing or judgment, shall issue in any case . . . until the plaintiff, or some responsible person for him, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court or judge shall deem sufficient to secure the amount or other matter to be enjoined, and all damages that may be occasioned by such injunction to the parties enjoined, or to any party interested in the subject-matter of the controversy. . . ." And several times it has been held in this State that a court exceeds its jurisdiction in issuing a preliminary injunction unless and until a proper injunction bond has been given. [State ex rel. Mo. Pac. Ry. Co. v. Williams, 221 Mo. 227, 265, 120 S. W. 740, 750-1; State ex rel. Thrash v. Lamb, 237 Mo. 437, 447, 141 S. W. 665, 668; State ex rel. Jiner v. Foard, 251 Mo. 51, 57, 157 S. W. 619, 620; State ex rel. American Bankers Assur. Co. v. McQuillin, 260 Mo. 164, 173, 168 S. W. 924, 926; State ex rel. St. Ferdinand Sewer Dist. v. McElhinney, 330 Mo. 1063, 1070, 52 S. W. (2d) 400, 402, 83 A. L. R. 202.]

Neither will a mere deposit in court take the place of a statutory injunction bond, at any rate unless made upon the conditions required by the statute and unless the amount deposited be adjudged sufficient by the court. [Aetna Ins. Co. v. Security Printing Co. (Mo. App.), 196 S. W. 93, 96.] The court may, however, in connection with the granting of a preliminary injunction and the execution of an injunction bond, require further that the disputed portion of the rate in litigation be impounded in court. [San Francisco Gas & Elec. Co. v. City and County of San Francisco, 164 Fed. 884; Pacific Tele. & Telegraph Co. v. City of Los Angeles, 192 Fed. 1009.] This may serve to reduce the hazard to the opposing litigant, and would, perhaps, justify a reduction in the amount of the bond.

 IV. As against the Attorney General's contention that they should have obtained a preliminary injunction and given bond, the respondents also invoke the doctrine of laches aided by estoppel, referring us to: State ex rel. Brown v. Town of Westport, 116 Mo. 582, 593 et seq., 22 S. W. 888, 890; State ex inf. Major, Atty. Gen., v. Arkansas Lumber Co., 260 Mo. 212, 284, 169 S. W. 145, 168; State ex inf. Otto, Atty. Gen., v. School District of Lathrop, 314 Mo. 315, 328 et seq., 284 S. W. 135, 139. Ordinarily, laches will not be

imputed to the State. 21 Corpus Juris, section 216, page 217; but the Westport case and the Lathrop case just cited, and several other decisions referred to therein, did allow that defense against the State in *quo warranto* proceedings. However, a reading of these cases will show that in them the effort was to oust *de facto* municipal corporations, school districts and the like, and the doctrine was enforced against the State principally on the ground that the public interest would be better served by denying the ouster. These decisions do not appear to be controlling in the instant case but we shall consider the point as presented by respondents.

They rely on the acquiescence of the then Superintendent of Insurance and Attorney General in the collection and impounding of the rate increase for more than two years until our opinion in the North British & Mercantile Insurance Company mandamus case was delivered in August, 1932. They argue there was no occasion for them to resort to injunctive process during that time because no injury was threatened and they were being permitted to collect the increased rate, which was all they could have obtained by an injunction. And they point out that when the superintendent finally made an attack on the impounding orders in August, 1932, his motion was based on the ground that the statute did not empower the circuit court to enter the orders (as was held in the mandamus opinion) and not on the ground that no injunction had been obtained. The record does not indicate that the latter question ever was raised until the present Attorney General raised it in the instant *quo warranto* proceeding. And so respondents say the State is barred by laches from prosecuting the case on that theory.

Are respondents correct in saying there was no occasion for them to seek an injunction as long as the superintendent and Attorney General acquiesced in the collection and impoundment of the rate increase? We think not. True it is that their petition in the review proceeding alleged the superintendent's order denying the new rate was unconstitutional and void because confiscatory; and it is also true we held in State ex rel. Hyde v. Westhues, 316 Mo. l. c. 470, 290 S. W. l. c. 447, decided in 1926, that "a void rate-reduction order is of itself entirely harmless. Only the enforcement or compulsory observance of such an order can produce injury." But that case differed from this. There, we were bound by the allegations of a petition under consideration and *assumed*, as was alleged, that a certain rate-reduction order in controversy was void. If it was void then, of course, injury could result only from its enforcement. But here, we cannot assume the superintendent's denial of the rate increase is void. That is the question for ultimate determination in the review proceeding. Prima facie, the order is valid: the statute, Section 5874, puts the burden of proof on the respondents to establish its invalidity. A valid order denying a rate increase is not

harmless. Section 5864 says no rate shall be raised without the approval of the Superintendent of Insurance. The order itself, without more, legally barred the collection of the rate. If the respondents desired to collect the rate notwithstanding, it was incumbent on them to proceed according to law, by making a preliminary showing that the order was confiscatory, obtaining an interlocutory injunction and giving bond.

In default of such action on the part of the respondents, the circuit court exceeded its jurisdiction in directing the collection and impoundment of the rate increase, and the mere acquiescence of the Superintendent of Insurance and Attorney General could not validate the impounding orders. The respondents are not entitled to say they were misled by such acquiescence. From the institution of the review proceeding in June, 1930, until the decision of the North British & Mercantile Insurance Company case in August, 1932, the then Attorney General and Superintendent of Insurance on the one hand, and the respondent companies on the other, all were acting on the same wrong legal theory, as the record plainly discloses. They assumed the statute contemplated the collection and impounding of the rate increase. Perhaps it would be fair to say the superintendent submitted to the collection and impoundment rather than that he acquiesced in it. But even if there was more than submission in his attitude—if there was something affirmative signifying voluntary consent—the statutes gave him no authority to permit the collection of a rate increase he had disapproved. Section 5864 provides a rate shall not be raised without his approval, and he could not override it by acquiescence or even formal stipulation. [State ex rel. Abeille Fire Ins. Co. v. Sevier, 335 Mo. 269, 73 S. W. (2d) 361, 367.]

It is true ignorance of the law will not ordinarily excuse laches. 21 Corpus Juris, section 243, page 247; but if the superintendent ought.to have known the law, by the same token so should respondents. We are not intending to hold that the adversary parties to an injunction suit, if *sui juris* and acting in their own interests, cannot waive the giving of an injunction bond, or that they cannot agree to the sequestration or impounding of the physical subject matter of the controversy even where no injunction is prayed. But we do say the Superintendent of Insurance as a public officer could not legally acquiesce in the collection of a disapproved rate increase from policyholders, thereby waiving the protection which our injunction law afforded the State and the public.

V. Several other points against the writ are made by respondents in their brief. We shall refer as briefly as possible to the more important of these. It is first contended the petition "should be dismissed because it does not properly lie as a joint procedure."

Respondents' theory is that the sixty-eight defendant insurance companies cannot be proceeded against jointly because they did not act in concert in making and collecting the 16⅔ per cent increase. This defense was pleaded in their several separate returns. The learned special commissioner found that while there was no evidence of direct communion or concerted action between the several insurance companies, themselves, yet there was substantial ground for inferring they acted together by and through their common agent, the Missouri Inspection Bureau. This bureau held powers of attorney from all of the companies (except three). It applied for the same rate increase at the same time for all of these companies and likewise acted for all in postponing the effective date of the increase four several times, and finally in directing the collection of the increased rate beginning May 28, 1930. We think the special commissioner's conclusion that the companies did act in concert and that this proceeding in *quo warranto* lies against all of them, is amply sustained by the foregoing facts and the law. [Aetna Fire Ins. Co. v. Shanks, 14 Fed. (2d) 690, 694; State ex inf. Barker, Atty. Gen., v. Armour Packing Co., 265 Mo. 121, 149, 176 S. W. 382, 389; State ex inf. Hadley, Atty. Gen., v. Standard Oil Co., 218 Mo. 1, 362, 116 S. W. 902, 1013.]

As to the three companies mentioned above for which the Missouri Inspection Bureau did not act when the rate increase was filed, the special commissioner upheld the respondents' contention that this *quo warranto* proceeding would not lie against them because they did not act in concert with the other companies. The facts were that these three companies came into the State after the review suit was filed and voluntarily joined therein. They have charged and collected the disputed rate increase from their policyholders since that time. Having voluntarily entered the review proceeding, collected the increased rate, and arrayed themselves with the other respondent companies in their attempt to maintain the same, we think they should be equally bound by the result, and believe the special commissioner erred in holding the action would not lie against them. These companies are: Standard Insurance Company of New York; Union Marine & General Insurance Company, Ltd.; Dixie Fire Insurance Company.

VI. Another contention is that the rights sought to be protected in the instant *quo warranto* proceeding are merely private rights; and that *quo warranto* at the instance of the Attorney General as chief law enforcing officer of the State will not lie to redress mere private grievances as distinguished from matters of public concern. Two Missouri cases are cited in support of this contention. The first is State ex inf. Crow, Atty. Gen., v. A. T. & S. F. Ry. Co., 176 Mo. 687, 75 S. W. 776, 63 L. R. A. 761, where it

was held the Attorney General could not maintain *quo warranto* against a railroad corporation for the purpose of attacking certain reconsignment charges it was exacting from grain shippers at Kansas City, Missouri. The other case is State ex rel. Barker, Atty. Gen., v. C. & A. Railroad Co., 265 Mo. 646, 178 S. W. 129. There the Attorney General brought an action in accounting against a railroad company to recover excess freight charges and passenger fares which the railroad had collected from the State and the public under protection of an injunction during the pendency of unsuccessful litigation attacking certain Missouri statutes which fixed maximum freight and passenger rates. It was held the State could sue for money it had wrongfully been required to pay, but that the Attorney General could not sue in behalf of individual shippers and passengers; that these latter would have to sue for themselves.

These two Missouri decisions, because of their different facts, are not controlling here, as the learned special commissioner has demonstrated in his report. The first one, the Crow case, was concerned merely with a local controversy at Kansas City, Missouri, over reconsignment freight charges in the railroad yards there. It did not affect the public interest at large in this State. In the other case, the Barker case, the Attorney General was attempting to act for the whole public and to recover freight and passenger refunds due individual citizens as well as the State. The wrong had already been done and the action was neither prospective nor regulatory in its effect. It affected only interests and rights which had become private.

But when we turn to the authorities from other jurisdictions, the question whether a corporation may be disciplined or ousted by *quo warranto* for collecting unlawful rates, appears to be doubtful or close. 22 Ruling Case Law, sec. 14, page 678, says:

"A number of cases have arisen in connection with the making of unreasonable or unlawful charges for services rendered in the course of the exercise of corporate rights. Ordinarily this is a private injury and may be remedied by private action, but in some of the cases jurisdiction in *quo warranto* has been sustained. The fact that an individual or individuals aggrieved have an ordinary adequate remedy does not operate to prevent the State's proceeding by *quo warranto* when the illegal charge is one in which the public as a whole is interested. In some cases, however, the right to a remedy by *quo warranto* has been denied upon the ground that the injury is of a private nature and should be redressed by private action."

One case cited in respondents' brief. Oklahoma v. A., T. & S. F. Ry. Co., 220 U. S. 277, 286, 31 Sup. Ct. 434, 55 L. Ed. 465, tends strongly to support their contention. It seems to hold that a state cannot maintain a suit in its own name in the Federal courts to prevent a railroad from collecting unreasonable or illegal rates even

though the rights of all shippers in the State be affected thereby. But in a later decision citing the above case the United States Supreme Court concedes the question depends on whether the rights and interests of the public at large are substantially affected. [Pennsylvania v. West Virginia, 262 U. S. 553, 592, 610, 43 Sup. Ct. 658, 67 L. Ed. 1117.]

State ex inf. Hadley, Atty. Gen., v. Standard Oil Co., 218 Mo. 1, 349, 116 S. W. 902, 1009, was an original proceeding in *quo warranto* in this court to oust the respondent oil companies because they had violated the anti-trust laws of this State by forming a combination in restraint of trade. This court laid down the general doctrine (quoting from 2 Clark & Marshall on Private Corporations, sec. 314b) that *quo warranto* would lie "whether the misuser or abuse consists in the exercise of a franchise or power not conferred upon the corporation by its charter, or in the violation of prohibitions in its charter, or *in the violation of prohibitions in general laws* to which it is subject, or in the violation of established principles based upon the ground of public policy." (Italics ours.) This decision was affirmed in Standard Oil Co. v. Missouri, 224 U. S. 270, 32 Sup. Ct. 406, 56 L. Ed. 760, Ann. Cas. 1913D, 936. In that case the United States Supreme Court said that whatever the rule may be elsewhere the Supreme Court of this State is the judge of the scope of its own jurisdiction in *quo warranto*.

Getting back to the instant case. The fire insurance business is affected with a public interest. [German Alliance Insurance Co. v. Lewis, 233 U. S. 389, 34 Sup. Ct. 612, 58 L. Ed. 1011.] In this State a department of the State government has been created to supervise and regulate companies engaged in that business. The statute, Section 5864, forbids the increasing of rates charged by such companies except with the approval of the Superintendent of Insurance. In this instance a large number of companies acting together made a state-wide increase in rates without such approval. It was not a mere local matter but substantially concerned the public. We think *quo warranto* will lie.

VII. Kindred contentions are made that Article VIII, Chapter 37, Revised Statutes 1929, in which all the statutes hereinbefore discussed appear, is a self-contained law for the regulation of insurance rates; that it provides for the revocation of licenses of companies offending thereagainst and for the infliction of fines and penalties; that these are the exclusive methods provided by law and that the right of *quo warranto* cannot be substituted as a means of regulation. It is also contended that the mere collection of an alleged excessive insurance rate is not of the essence of the charter powers of the respondent companies and cannot be reached by *quo warranto*. We think these contentions are sufficiently dis-

posed of adversely to respondents by what is said in State ex inf. Hadley, Atty. Gen., v. Standard Oil Co., 218 Mo. 1. c. 347 et seq., 116 S. W. 1, c. 1008 et seq. [See, also, 53 A. L. R. 1038, note.]

VIII. Still another contention made by respondents is this. Section 5874 says that during the pendency of a review proceeding all orders of the Superintendent of Insurance *reducing* rates shall be suspended, and the difference between the existing rate and the lower rate ordered shall be collected and impounded. Respondents argue that while the order of the superintendent under consideration in the instant case on its face purports to be an order denying a rate *increase,* nevertheless it is in fact and law an order for a rate reduction calling for collection and impoundment of the part in dispute under the foregoing provision of the statute—without exercise of the inherent powers of the court.

Respondents advance two views on this point. The first is that the four months' delay of the Superintendent of Insurance in acting on their application for the rate increase was unreasonable and obstructive and in law amounted to an approval thereof—somewhat on the theory that silence gives consent, or that equity regards that as done which ought to have been done. And so, they say, when the rate as thus approved was finally denied by the superintendent his act amounted to a reduction thereof. This contention cannot be sustained. The facts are that a large number of companies filed their applications for the rate increase at the same time with voluminous statistical data covering their several experiences for the preceding period of five years. Four times at the request of the Superintendent of Insurance the effective date of the new rate was set forward with the consent of the respondents to enable him to investigate the proposed increase. There is absolutely nothing in the record here to show he did approve it actually or constructively, and nothing which would justify us in holding he ought to have approved it or that he was guilty of unreasonable delay. We are not, however, passing on the merits of the issue pending in the review proceeding.

The other theory suggested by respondents is that the mere making and filing of a rate increase with the Superintendent of Insurance *establishes* it as a rate, and that the subsequent disapproval thereof by the superintendent operates as a reduction of that rate back to the rate previously on file. That is not and cannot be true as to rate increases. Section 5864 expressly provides a rate increase shall not be collected until it has been approved by the Superintendent of Insurance. Before that it is not a legal rate, and the denial of it is therefore not a rate reduction. Our ruling in the North British & Mercantile Co. mandamus case, 330 Mo. 1. c.

1155, 52 S. W. (2d) 1. c. 476, is correct and controlling on that question.

IX. Three of the respondents are shown by the record not to have collected or impounded any increased rates. As to these our preliminary rule in prohibition should be discharged. These companies are: Birmingham Fire Insurance Company, Pennsylvania; Ohio Farmers Insurance Company of Ohio; Transportation Insurance Company of New York.

Twenty of the respondent companies had surrendered their licenses and ceased to transact new business in the State of Missouri before the institution of this *quo warranto* proceeding. But they were transacting business when the review proceeding was filed in the circuit court on June 5, 1930, and for sometime thereafter until they surrendered their licenses, during which time they collected and impounded the disputed rate increase, and the proceeds of such collections are now in the registry of the circuit court. These twenty respondents acted and still are acting with the others in the maintenance of the review suit. Considering these facts we agree with the learned special commissioner that our writ should go against these twenty respondents along with the others as to these excess premiums collected and impounded, even though they had surrendered their licenses to transact new business in the State before this *quo warranto* suit was instituted.

We further agree with the learned special commissioner that no fine should be assessed against the respondents in view of the fact that in the collection and impounding of the disputed rate increase they acted in obedience to an order of the Circuit Court of Cole County.

But we have no right in this *quo warranto* proceeding directly or indirectly to take charge of the funds which have been impounded in the circuit court in the review proceeding, and to order their disbursement and distribution by that court to policyholders as prayed in the Attorney General's information. The circuit court has jurisdiction of those funds. [North British & Mercantile Ins. Company mandamus case, 330 Mo. 1. c. 1155, 52 S. W. (2d) 1. c. 476.] And as is said in State ex inf. Pope v. Mansfield Special Road District, 299 Mo. 663, 670, 253 S. W. 714, 716, "a *quo warranto* proceeding finds its limit in the forfeiture of the franchises of a corporation or in the ouster of officers from the exercise of official power." [See, also, 51 C. J., sec. 10, p. 314, sec. 18, p. 322, secs. 77, 78, p. 358, sec. 84, p. 361; State ex rel. v. Pittsburg, Y. & A. Railroad Co., 50 Ohio St. 239, 250 et seq., 33 N. E. 1051; Gulf Lines Connecting Railroad Co. v. Golconda Northern Ry. Co., 290 Ill. 384, 391, 125 N. E. 357; People v. T., St. L. & N. O. Railroad Co., 280 Ill. 495, 505, 117 N. E. 701.]

X. It is accordingly ordered and adjudged that all of the seventy-four respondents save the three named in the third preceding paragraph hereof be and they are ousted of the right and privilege of collecting the 16⅔ per cent increase in fire and windstorm insurance rates filed by them in the office of the Superintendent of Insurance of the State of Missouri on December 30, 1929, unless and until the same be approved by the Superintendent of Insurance of the State of Missouri as provided by law, or the same be permitted under the order, judgment or degree of a court of competent jurisdiction in that behalf.

The costs of this proceeding are taxed against respondents. All concur, except *Leedy, J.,* not sitting.