# THE STATE ex rel. JESSE W. BARRETT, Attorney-General, v. ALLEN MAY.

### In Banc, November 30, 1921.

1. **COURTS: Judicial Power: How Vested.** The Constitution of 1875 in declaring in one section that ''the judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided,'' shall be vested in a supreme court, courts of appeals, ''circuit courts, probate courts, county courts and municipal corporation courts,'' vested in the courts named all the judicial power of the State, and left nothing to be disposed of by the General Assembly; and by providing, by other sections, for one circuit court, one county court and one probate court for each county, and defining their jurisdiction, none of which was given jurisdiction in the affairs of municipalities, nor power to enforce their ordinances, it left to the Legislature power to create municipal courts, and that completed the scheme.

2. ————: **Municipal Courts: What Are.** The Constitution of 1875, in providing for the creation of ''municipal corporation courts,'' did not contemplate courts of common law, equity and criminal jurisdiction for school districts, road districts and townships; but the constitutional power to establish municipal corporation courts has reference to municipal courts established to administer the affairs and enforce the ordinances of municipalities.

3. ————: **Municipal Court: Common Pleas: Extra-Constitutional.** The General Assembly has no power to create another court of record having concurrent jurisdiction with the circuit court of the county, in matters of law and equity, in all cases where the amount involved does not exceed one thousand dollars, even though it be designated as a municipal corporation court. Such a court is not a municipal court, confined in its subject-matter jurisdiction to municipal affairs, but being given concurrent jurisdiction with the circuit court of the county, in certain matters of law and equity, is essentially a common pleas court; and the General Assembly was given no power to establish such inferior courts.

## Quo Warranto.

DEMURRER OVERRULED.

*Jesse W. Barrett*, Attorney-General, and *Merrill E. Otis*, Assistant Attorney-General, for relator.

Section 1 of Article VI of the Constitution of 1875 vests the judicial power of the State in a ''Supreme Court, St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts.'' The Legislature has no power to create any other court or type of court than those enumerated in this section. The term ''municipal corporation court,'' as used in Section 1 of Article VI, means only local city or police courts, primarily intended as forums for the enforcement of city ordinances, with subject-matter jurisdiction restricted to matters affecting the city and its inhabitants and essentially to matters relating to city ordinances and with territorial jurisdiction confined within the city limits. The proposed court, of which respondent has been appointed judge, is not a municipal corporation court within the meaning of the Constitution. Its territorial jurisdiction is not confined to any city. On the contrary, it is given jurisdiction co-extensive with the entire county. Its subject-matter jurisdiction is not confined to the enforcement of city ordinances. On the contrary, it is expressly denied such jurisdiction and is given jurisdiction concurrent with the circuit court in civil matters up to the amount of one thousand dollars, with appeals lying directly to the Supreme Court and the Court of Appeals. In attempting to create such a court the Legislature exceeded its constitutional authority and violated Section 1 of Article VI. Compare Section 1, Article V, Constitution of 1820; Section 1, Article VI, Constitution of 1865; Journals of Constitutional Convention, vol. 1, p. 338. See Cake v. White, 91 Mo. 79; State ex rel. v. Seehorn, 246 Mo. 541, 555; Grand Rapids v. Gray, 38 Mich. 461; Atkins v. Fraker, 32 Wis. 510; Connors v. Gorey, 32 Wis. 518; Miller v. People, 230 Ill. 65; Morton v. Pusey, 237 Ill. 26.

*G. L. Zwick* for respondent; *Allen May,* respondent *pro se.*

(1) Legislative acts are presumed to be constitutional; and relator, having challenged this act, has the burden of showing its unconstitutionality beyond a reasonable doubt. Green County v. Lydy, 263 Mo. 77, 87; Ewing v. Hoblitzelle, 85 Mo. 64; State ex inf. v. Merchants Exchange, 269 Mo. 346, 356. (2) The Constitution is not a grant but a limitation of legislative power; and the Legislature may pass any law not forbidden by the Constitution either in express terms or by irresistible inference. Ex parte Roberts, 166 Mo. 207, 212; Harris v. Bond Co., 244 Mo. 664, 687; State ex rel. v. Board of Curators, 268 Mo. 598, 619; Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 350. (3) It is the province of the Legislature to distribute the judicial power of the State among the courts provided by the Constitution, subject only to such restrictions as are expressed therein. State ex rel. v. Nast, 209 Mo. 708, 720; State ex rel. v. Seehorn, 246 Mo. 541; State v. Wilson, 265 Mo. 1, 13; State ex rel. v. Burton, 266 Mo. 711. (4) The exercise of other than police jurisdiction in municipal corporation courts is constitutional. State ex rel. v. Seehorn, 246 Mo. 541; Cake v. White, 91 Mo. 79; Kansas City v. Land Co., 260 Mo. 395. (5) A county is a municipal corporation within the meaning of Article VI, Section 1, of the Constitution. Mo. Constitution, Art. 4, secs. 47, 51; Art. 9, secs. 6, 7, 18, 19; Art. 10, secs. 1, 9, 10, 12, 20; Art. 11, sec. 11; Bexar County v. Linden, 205 S. W. (Tex.) 478; State ex rel. v. Leffingwell, 54 Mo. 458, 475; Laramie County v. Albany County, 92 U. S. 307, 23 L. Ed. 552; Tippecanoe County v. Lucas, 93 U. S. 108, 23 L. Ed. 822; Mount Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699; Murphy v. Freeholders, 102 Atl. (N. J.) 896; Rathbone v. Hopper, 57 Kan. 240, 45 Pac. 610; Ex parte Selma & G. R. Co., 45 Ala. 496; Pacific Coast Ry. Co. v. Porter, 74 Cal. 261, 15 Pac. 774; In re Dowden, 36 Minn. 430, 31 N. W. 517; Lincoln County v. Brock, 37 Wash. 17, 79 Pac. 478. (6) The

Constitution was designed by its framers to be a single, symmetrical and harmonious chart of government of the people of the State free from repugnancy or conflict in any of its provisions and presenting a single scheme of correlated parts for the control and regulation of all organs and departments of the state government. Calland v. Springfield, 264 Mo. 296, 301. (7) The Constitutional Convention intended that municipal corporation courts should be more than police courts, and that their jurisdiction should not be limited to cities and towns. Journal of the Constitutional Convention of 1875, Vol. 1, pp. 338, 390, 424; Mo. Constitution, Art. 9, sec. 7. (8) A court almost identical with this one, under a similar constitutional provision, was held constitutional in a sister state prior to the adoption of the Constitution of 1875. Atkins v. Fraker, 32 Wis. 510; State ex rel. Stark v. McArthur, 13 Wis. 383.

HIGBEE, J.—The Attorney-General has exhibited to this court an information in the nature of a *quo warranto*, charging that, under the provisions of an act of the General Assembly approved March 28, 1921, entitled, "An Act Creating a Municipal Corporation Court in Certain Counties," etc. (Laws 1921, p. 226), the Governor appointed the respondent judge of said court in Buchanan County; that said respondent has duly qualified and is exercising the powers and duties of said office; that said act contravenes Section 1 of Article VI of the Constitution of Missouri; that respondent is unlawfully holding said office of judge of said municipal court, for the reason that said act is violative of the Constitution and is null and void. The respondent waived the issue of the writ, entered his appearance, and, agreeing that the petition may be treated as a writ of *quo warranto*, demurred thereto (1) as not stating facts sufficient to constitute a cause of action, and (2) that under the allegations the respondent is lawfully holding the office of judge of said court.

290 Mo.—20

The act creates a municipal corporation court in all counties in this State having a population of 90,000 and not over 150,000, and in which is located a city of not less than 75,000 inhabitants (which provisions spell Buchanan County only), said court to be a court of record with jurisdiction coextensive with the county in which it is located "in all actions at law or equity concurrent with justices of the peace and with the circuit court wherein the amount involved does not exceed the sum of one thousand dollars and the same jurisdiction of criminal cases as now given to justices of the peace and shall, within the limits thus given, exercise all the duties and powers now given by law to circuit courts and subject to such exceptions as herein enacted; the practice of law and procedure in said court shall be governed by the code of civil procedure as now in force as applied to the circuit court." The court is to be in continuous session and shall not have terms, but process shall be returnable in ten days and not more than thirty days, and cases shall be tried on the return day, or as soon thereafter as the court can hear them. The circuit clerk is clerk of the court and shall furnish a deputy clerk; appeals lie directly as from judgments of the circuit court. Cases may be removed from justices of the peace by either party to said court at any time before trial is commenced. Section 10 reads: "Nothing in this act shall be held to apply to or affect the conduct and business of city, police or municipal courts in this State." The foregoing synopsis is sufficient for the consideration of this case. If the court created by the act had been called a court of common pleas, it would not have been a misnomer.

Section 1, Article V, of the Constitution of 1820, reads: "The judicial power as to matters of law and equity shall be vested in a 'Supreme Court,' in a 'Chancellor,' in 'Circuit Courts,' and in such inferior tribunals as the General Assembly may, from time to time, ordain and establish."

Section 1, Article VI, of the Constitution of 1865, reads: "The judicial power, as to matters of law and equity, shall be vested in a supreme court, in district courts, in circuit courts, and in such inferior tribunals as the General Assembly may, from time to time, establish."

Section 1, Article VI, of the Constitution of 1875, reads: "The judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts."

Under the Constitutions of 1820 and 1865, the judicial power of the State was not vested exclusively in the courts designated in the sections cited supra. In addition to those named, the General Assembly was empowered to ordain and establish other inferior courts. Accordingly, it created courts of inferior jurisdiction, such as courts of common pleas, recorder's courts, and doubtless other courts in many of the counties of the State. But the Legislature was shorn of this power by the Constitution of 1875, which provided a complete system of judicial tribunals for the State and vested in them all the judicial power of the State. The Constitution disposed of all the judicial power of the State in matters of law and equity and left nothing to be disposed of by the General Assembly. [State ex rel. v. Woodson, 161 Mo. l. c. 454; State ex rel. v. Locker, 266 Mo. 384, 390.] One circuit court, one county court and one probate court are provided by other sections of the Constitution for each county in the State, and their respective jurisdictions defined. Neither of these had jurisdiction in the affairs of municipalities, nor power to enforce their ordinances. Therefore, the Legislature was empowered to create municipal courts. That completed the scheme. The act in question expressly provides that it shall not apply to or affect the conduct and business of city, police or municipal courts in the

State. It is confessedly an attempt to create another court of record, having concurrent jurisdiction with the circuit court of the county in matters of law and equity, when the Constitution provides that there shall be one circuit cóurt in each county and all the judicial power of the State is vested by the Constitution in the tribunals named in Sections 1 and 37 of Article VI, and no power is given to the Legislature to create other courts save municipal corporation courts. It is, however, contended by respondent that the term "municipal corporation" includes counties, townships, school districts, drainage districts and other political divisions of the State. It is true this expression is found in the Constitution. Section 11, Article XI, provides that "neither the General Assembly nor any county, city, town, township, school district or other municipal corporation shall ever make an appropriation or pay from any public fund whatever, anything in aid of any religious creed, church or sectarian purpose," etc. It is found also in other sections of the Constitution. But this use of the term is generally avoided as unfortunate and inapt by many law-writers.

It is unreasonable to assume that the framers of the Constitution, when providing for the creation of municipal corporation courts, contemplated courts of common law, equity and criminal jurisdiction for school districts, drainage districts, road districts and townships. That is the meaning of respondent's contention. In Miller v. People, 230 Ill. 65, 74, it is said:

"The General Assembly in proposing and the people in adopting the amendment of 1904 are presumed to have used the words 'municipal courts' in their natural and ordinary meaning. [Hills v. City of Chicago, 60 Ill. 86; City of Beardstown v. City of Virginia, 76 id. 34; 8 Cyc. 729; Cooley's Const. Lim. 58.] The words 'municipal' is defined by all authorities as meaning of or pertaining to a city or corporation having the right to administer local government. The municipal court of the city of Chicago is therefore one which pertains to the

corporate or local government of the city and the administration of the law within the city. We held in City of Chicago v. Reeves, supra, that municipal courts are a proper part of the local government, and such courts are generally given exclusive jurisdiction for violations of municipal ordinances. . . . Under the rule that the words 'municipal courts' were used in the amendment in their ordinary and natural meaning, the municipal court of Chicago is to be regarded as a local court of the city, established for the purpose of administering the law within the city, and not as a part of the judicial department of the government of the State at large."

Speaking of the recorder's court of the city of Hannibal, BLACK, J., in Cake v. White, 91 Mo. 79, l. c. 81, said:

"The recorder's court was not abolished by the Constitution of 1875, for Section 1 of Article 6, in express terms, provides for the continued existence of municipal corporation courts, and hence the recorder's court did not cease to exist, by force of Section 42, of the same article."

Respondent relies with confidence on State ex rel. v. McArthur, 13 Wis. 384. The Legislature of that state had created the Milwaukee municipal court, with jurisdiction coextensive with the county. The Constitution of that state, in that respect, was almost identical with Section 1, Article VI, of our Constitution of 1865, and authorized the establishment of municipal courts and courts of inferior jurisdiction. Referring to the McArthur case, DIXON, C. J., in Atkins v. Fraker, 32 Wis. 510, 515, said:

"It seems to me, on recurring to the case last cited, that Mr. Justice PAINE might have saved himself some labor by regarding the municipal court in the city and county of Milwaukee as one of those authorized by the constitution under the denomination of 'inferior courts in the several counties.' "

The Constitution having disposed of all the judicial power of the State and provided a system of tribunals for the administration of the law of the State, and having withdrawn from the General Assembly the power to create other inferior courts, and having thus covered the whole field, it is manifest that the authority to establish municipal corporation courts has reference solely to municipal courts as that term is universally understood, otherwise there would be no authority for the creation of courts to administer the affairs and enforce the ordinances of municipalities, from which sphere the court in question is expressly excluded by the act creating it.

It is not and cannot be claimed that the jurisdiction of our circuit courts may not be altered, abridged or enlarged. [Sec. 22, Art. VI, Constitution.] But the fact remains that it is not within the competence of the General Assembly to create other courts than those specified in our organic law, nor enlarge or diminish their jurisdiction when that is defined by the Constitution. [State ex rel. v. Locker, supra.]

We do not question that courts of the character contemplated by the act would have a salutary influence and purge the administration of justice in the larger cities of our State of many crying evils. That has been demonstrated in other jurisdictions, and is no longer an untried experiment. An amendment to the Constitution was adopted in Illinois, authorizing the creation of the Municipal Court of the City of Chicago, which, no doubt, has in a large measure fulfilled the expectations of its promoters. That court, however, as has been seen, is a municipal court, having no jurisdiction outside of the city. [Miller v. People, supra.]

There is no analogy between this case and State ex rel. v Seehorn, 246 Mo. 541. In that case it was held by a divided court that under the Constitution, Kansas City had authority to frame and adopt a charter providing for a municipal court, vested with power to hear and determine proceedings for the condemnation of lands for public streets and assessing the damages and benefits,

such proceedings being matters of local municipal concern. VALLIANT, C. J., and FERRISS, J., concurred for the reason that the city for more than twenty years had acted on the assumption that it had authority to create such a court and confer on it such jurisdiction, and that doubtless in that period property rights had been acquired to a great·extent and it would be unwise to declare that rights which have arisen out of the exercise of such jurisdiction by such courts cannot be upheld. Judge GRAVES delivered a dissenting opinion, in which Judge WOODSON concurred. Under the Constitution, the General Assembly could have created the court. It was evidently considered an academic question by some of the judges.

A statute fairly susceptible of a construction in harmony with the Constitution must be given that construction by the courts. Unless clearly repugnant to the organic law, it must be upheld. [State ex rel. v. Burton, 266 Mo. 711, 718; State ex rel. v. County Court, 128 Mo. 427.] But when it is clear, as in this case, that an enactment is in contravention of the Constitution, it is our imperative duty to so declare. In view of what has been said, it cannot be reasonably contended that the act in question is not in contravention of Section 1 of Article VI of our Constitution. It follows that the demurrer to the information must be overruled and the judgment of ouster rendered against the respondent.

It is so ordered. All concur.