Howard CHAMBERLIN and William
Bryan Miller, Respondents,

v.

MISSOURI ELECTIONS COMMISSION,
a Governmental Agency, et al.,
Appellants,

and

John C. Danforth, Intervenor-Appellant.

No. 59505.

Supreme Court of Missouri,
En Banc.

June 21, 1976.

Howard F. Sachs, Kansas City, for appellants.

Arthur A. Benson II, Kansas City, for respondents.

John C. Danforth, Atty. Gen., Andrew Rothschild, Asst. Atty. Gen., Jefferson City, for intervenor.

HENLEY, Judge.

This is an action for declaratory judgment and injunctive relief. It presents questions involving the constitutionality of parts[1] of the Missouri Campaign Finance and Disclosure Law (hereinafter the Campaign Law) enacted by the initiative in 1974 effective January 1, 1975.[2]

Howard Chamberlin and William Bryan Miller (hereinafter plaintiffs or Mr. Chamberlin, Mr. Miller),[3] brought this action against the Missouri Elections Commission and its members[4] (hereinafter the Commission), and Ralph L. Martin, prosecuting attorney of Jackson county,[5] as defendants.[6] John C. Danforth, attorney general of Missouri, intervened as a party defendant (hereinafter Intervenor). Both plaintiffs are attorneys-at-law licensed to practice in this state. Mr. Chamberlin was a candidate for the office of Mayor of the city of Lotawana in the spring, 1975, election and at that time was a stockholder in a professional legal corporation in which he held an interest of more than 10%. A client paid the corporation more than $500 for his professional services during the 12 months preceding the election. He did not comply with the provisions of either subsection 1(5) or subsection 1(6) of § 130.035.[7] Mr. Miller

1. Subsections 1(5) and 1(6) of § 130.035, RSMo Supp.1975. References to sections of the statutes will be to this Supplement unless otherwise stated.

2. Laws of Missouri, 1974, pp. 937–953.

3. There was a third plaintiff in the trial court: Dorothy Knutter, wife of a candidate for office in the Kansas City 1975 election, who was held to have no standing to sue. She did not appeal.

4. Samuel B. Murphy, David E. Blanton, Robert F. Karsch, Ed Bohl, D. W. Gilmore and Frank E. Nutt.

5. This defendant appealed but did not file a brief.

6. There was another defendant in the trial court, the Kansas City Board of Election Commissioners, which did not appeal.

7. These subsections are as follows:

"1. Every candidate shall file reports in writing with the appropriate officer, at the times prescribed in section 130.045. The reports shall be subscribed and sworn to by the candidate before an officer authorized to administer oaths, setting forth in detail all contri-

has held since 1968 the office of judge of the municipal court of Raytown, a part-time judgeship. He was a candidate for and was reelected to that office April 6, 1976. It is agreed that he is a sole practitioner and, although the record is not clear, the case was tried and submitted on the theory that the facts were (1) since January 1, 1975, a client has paid him more than $100 for professional services, and (2) he has failed to comply with subsection 1(5).

By this action, plaintiffs sought a judgment declaring subsections 1(5) and 1(6) of § 130.035 unconstitutional and void on the ground, among others, that they violate rights guaranteed plaintiffs by the equal protection clause of the Fourteenth Amendment of the United States Constitution "by subjecting them to classifications that impose unequal burdens of disclosure upon them without advancing any rational or justifiable state interest in such classifications * * *." In addition to a declaratory judgment, plaintiffs also sought relief enjoining defendants from compelling them to comply therewith.

Plaintiffs' "equal protection" ground for relief is that these subsections make an arbitrary and unreasonable difference between the reporting requirements of a candidate who is a lawyer practicing alone (sole practitioner) and a lawyer who, having a 10% or more interest therein, practices in the form of a professional legal corporation (corporate practitioner); that the latter is favored and the sole practitioner invidiously discriminated against in that the sole practitioner is required to report as a source of income the identity of each client who paid him in excess of $100 (the greater burden of disclosure), whereas the corporate practitioner is required to report as a source of income only the identity of each client who paid the corporation more than $500, and then only if it was paid on behalf of or for services rendered by the candidate, as distinguished from another stockholder of the corporation (the lesser burden of disclosure). Other grounds for relief raised by plaintiffs will be referred to and discussed in connection with their cross-appeal.

The trial court filed a memorandum opinion, and entered judgment upholding plaintiffs' Fourteenth Amendment "equal protection" claim. The judgment, omitting a part not pertinent to the issues on appeal, is as follows:

1. "Plaintiffs are not excused from complying with the terms and provisions of Sections 130.035 1.(5) and (6) on the ground that compliance by them would violate the attorney-client privilege of confidentiality and the terms of that statute are not unconstitutional as applied to said plaintiffs under the facts of the case.

2. "Sections 130.035 1.(5) and (6) V.A.M.S. constitute an unlawful arbitrary classification in violation of the Fourteenth Amendment to the Constitution of the United States and are declared to be unconstitutional and void.

3. "Plaintiffs Chamberlin and Miller are excused from complying with Sections 130.035 [1](5) and (6) and Defendants are permanently enjoined from compelling Plaintiffs to comply with said Sections and from instituting criminal prosecution to compel compliance."

Defendants and Intervenor appealed from that portion of the judgment quoted in paragraphs numbered two and three. Plaintiffs appealed from that portion quoted in paragraph numbered one.

Defendants and Intervenor contend the trial court erred in reaching the constitu-

butions received and expenditures made by the candidate in endeavoring to secure his nomination or election. Each report shall set forth:

* * * * * *

"(5) A specific listing of the source, by name and address, of any gifts or income in excess of one hundred dollars received by the candidate or the candidate's spouse or minor children during the preceding twelve months or the time of the last report, whichever is later; and

"(6) A specific listing of the source, by name and address, of any gifts, salaries, fees, or other income which for the twelve-month period preceding the filing date, individually or in the aggregate exceeds five hundred dollars which has been paid on behalf of or for services rendered by the candidate to any sole proprietorship, partnership or corporation in which the candidate or the candidate's spouse holds an interest of ten percent or more."

tional question and in declaring subsections 1(5) and 1(6) unconstitutional, because they are susceptible of construction in harmony with the constitution. In *State ex rel. State Highway Commission v. Paul, et al.,* 368 S.W.2d 419 (Mo.banc 1963), the court said (l.c. 422):

■ "It is a cardinal rule of statutory construction that where a statute is fairly susceptible of a construction in harmony with the Constitution it must be given that construction by the courts and, unless the statute is clearly repugnant to the organic law, its constitutionality must be upheld. *City of Joplin v. Industrial Commission of Missouri,* Mo., 329 S.W.2d 687, 692[6]; *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160, 167[8]; *State on inf. Dalton v. Metropolitan St. Louis Sewer Dist.,* 365 Mo. 1, 275 S.W.2d 225, 234[23]; *State ex inf. McKittrick v. American Colony Ins. Co.,* 336 Mo. 406, 80 S.W.2d 876, 882–883[5]; *State ex rel. Barrett v. May,* 290 Mo. 302, 235 S.W. 124, 126[3].

"Courts will not ordinarily pass on constitutional questions where the case presented may be properly decided without doing so. *McIntosh v. Connecticut General Life Ins. Co.,* Mo., 366 S.W.2d 409, 412[2]; *City of St. Joseph v. Roller,* Mo., 363 S.W.2d 609, 612[6]; *Rider v. Julian,* 365 Mo. 313, 282 S.W.2d 484, 497[23]."

We conclude that subsections 1(5) and 1(6) are fairly susceptible of a construction that will obviate any need to reach and decide the Fourteenth Amendment question decided by the trial court. Read together, an ambiguity clearly appears from these two subsections in that different amounts or "floors" ($100 and $500) are fixed as reporting requirements for the same person. Subsection 1(5) appears to require the candidate to report the source of any income in excess of $100 received by him, while subsection 1(6) appears to require the candidate to report the source of any income in excess of $500 paid for services rendered by him to "any sole proprietorship * * *." In other words, under the first of these two subsections the reporting requirements of a candidate who is a sole

practitioner (a sole proprietorship) is governed by a $100 floor, while under the second the reporting requirements of the same person, a candidate who is practicing as a sole proprietorship (a sole practitioner), is governed by a higher floor: $500, the amount also set for the corporate practitioner.

■ This conflict or inequality in the level of the "floor" set by these two subsections for reporting the source of gifts, salaries, fees or other income received by the candidate, his spouse or minor children within the prescribed period of time reasonably may be, and is, resolved by construing the two subsections to require that the candidate who is a sole practitioner shall use the same floor ($500) as that set for a sole proprietorship and those who practice in the form of a partnership or corporation. We believe this construction to be consistent with the intent and purpose of the Campaign Law. With this conflict resolved, we consider and hold that a sole practitioner and a corporate practitioner are required by subsections 1(5) and 1(6) to report as follows:

1. Where the income received within the prescribed period of time is in excess of $100 but not in excess of $500, the candidate who is either (A) a sole practitioner or (B) a corporate practitioner shall report as the "source" of this income, not the name and address of each person by whom such amount was paid, but the business entity (sole proprietorship or corporation) from which he receives his income.

2. Where the income received within the prescribed period of time from any one person is in excess of $500, the candidate who is:

A. a sole practitioner shall report as the "source" of this income the name and address of each person by whom such amount was paid; and

B. a corporate practitioner holding a 10% or more interest in and who has rendered any service to the corporation which resulted in such income, shall report as the "source" thereof the name and address of

each person by whom such amount was paid.

■ Plaintiffs, in rebuttal, argue that this construction of subsections 1(5) and 1(6)[8] "create differential burdens of disclosure which have no rational relationship to any justifiable state interest and the classifications are, therefore, in violation of the equal protection clause of the [Fourteenth Amendment]." In attempting to demonstrate their contention, plaintiffs refer only to hypothetical fact situations which they assert present differences in burdens of disclosure, none of which are applicable to the facts of this case. Our decision is confined to and based upon the very narrow factual situation this case presents. The hypothetical fact situations pointed to by plaintiffs will be ruled upon when, and if, they are presented as live issues in a case.

As noted above, plaintiffs appealed from that portion of the judgment which stated that they are not excused from complying with provisions of subsections 1(5) and 1(6) on the asserted ground that compliance would violate the attorney-client privilege. A question is raised by the Commission, but not pressed, as to whether plaintiffs may appeal since the overall judgment was favorable to them. At the same time the Commission and Intervenor have recognized that points briefed by plaintiffs on their cross-appeal may be urged as alternate grounds in support of affirmance and have replied thereto in their briefs as respondents. We treat these points of plaintiffs as alternate grounds in support of affirmance of the judgment.

■ Plaintiffs contend that subsections 1(5) and 1(6) are unconstitutional in that they infringe upon the attorney-client privilege protected by the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel. We agree with the determination of the trial court that, under the facts of this case, these subsections are not unconstitutional as applied to plaintiffs.

We note that Mr. Chamberlin testified that he has clients who do not desire or will not permit him to disclose their identity, but he did not state that disclosure of their identity would subject them to harm, would have the effect of disclosing the substance of the client's communication, or would in any other respect violate the attorney-client privilege. On this point plaintiffs rely primarily upon testimony by attorneys, not parties in this case, that on occasion an attorney-candidate might be compelled to make disclosures required by subsections 1(5) and 1(6) which could result in violation of the attorney-client privilege and thereby, they contend, violate the client's Fifth and Sixth Amendment rights.

We held above that in certain specified circumstances all candidates are required to disclose by name and address the identity of various sources of income. Plaintiffs insist that a blanket exception should be made for candidates who are attorneys, by allowing them to avoid disclosure of the identity of clients who *might* fall within the purview of the statute, on the ground that the attorney-client privilege requires it.

■ We believe that insofar as the disclosure requirements of these subsections are concerned the attorney-client privilege generally will remain inviolate. We say this because the well-established rule is that *identity* of a client is not within the scope of the privilege. VIII Wigmore; § 2313. *Mauch v. Commissioner of Internal Revenue,* 113 F.2d 555 (3rd Cir. 1940); *United States v. Long,* 328 F.Supp. 233, 236 (E.D. Mo.1971); *In re Grand Jury Proceedings,* 517 F.2d 666 (5th Cir. 1975). There is a very narrow exception to this rule: e. g., the identity of a client may be shrouded and the privilege recognized "when so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication." *N.L.R.B. v. Harvey,* 349 F.2d 900, 905 (4th Cir. 1965).

In the well-known case of *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960), cited by plaintiffs in support of the claimed privi-

8. Suggested by the Commission and Intervenor.

lege, the court cautioned that whether or not identity of a client is privileged "must be assessed on a case to case basis, depending on the particular facts of each case." 279 F.2d at 631.

There is no evidence in this case which brings these plaintiffs within the exception to the rule.

Plaintiffs further assert that "notwithstanding the fact that neither [of them] had * * * a client whose interest would be prejudiced by disclosure of the fact of representation" they have standing in this type of action under the "overbreadth doctrine" to attack the constitutionality of subsections 1(5) and 1(6) as applied to the obligations and rights of others (not parties hereto) to whom the attorney-client privilege is applicable. In this connection, plaintiffs refer to attorneys who testified that an attorney-candidate whose practice is largely in the criminal law field may be, in some circumstances, forbidden to disclose the source of fees, because disclosure might in certain hypothetical situations result in incriminating the client.

■ We applied the overbreadth doctrine in *City of St. Louis v. Burton,* 478 S.W.2d 320 (Mo.1972), striking down a "loitering" ordinance whose apparent reach was much broader than the true intent of the ordinance. However, employment of the doctrine has been narrowed somewhat; it is used "sparingly and only as a last resort." *Broaderick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). For the most part it is applicable only when the reach of the law is *substantially* excessive and its application normally is in First Amendment cases rather than cases involving regulation of political conduct. Its inapplicability is demonstrated by the treatment of campaign contribution disclosure requirements in the decision of the United States Supreme Court in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

The *Buckley* case considered a constitutional challenge of the Federal Campaign Finance law. It was alleged that the statute called for potential unconstitutional disclosures that would unduly "chill" constitutionally-protected political activities. The court recognized a possible constitutional problem with compelled disclosure, and stated that to uphold such a disclosure requirement, there must be a "'substantial relation' between the governmental interest and the information required to be disclosed." 96 S.Ct. at 656.

Such governmental interest must be "sufficiently important to outweigh the possibility of infringement" upon claimed constitutional rights. Importantly, the court concluded in reference to election campaign laws that "disclosure requirements are of this magnitude." 96 S.Ct. at 657.

■ The court in *Buckley* rejected, as we do, a claim of harm from disclosure where such was "highly speculative" and not presently before the court. It was concluded that the statute would stand until an actual case corroborates and justifies the claim of anticipated harm and unconstitutional application. We adopt the "as applied" approach endorsed in *Buckley.*

In sum, there has been no showing in this case that a serious barrier presently exists precluding compliance by plaintiffs with the statutory requirement that they, as candidates for office, disclose the names and addresses of their clients who have paid more than $500 for their services.

If problems involving issues of attorney-client privilege or denial of rights or privileges guaranteed by the constitution should arise in a specific case, procedures are available to test the efficacy of the disclosure requirements "as applied" to that situation: (1) an advisory opinion by the Commission could be requested; or (2) a declaratory judgment could be sought in an actual controversy. But until such controversy arises, we decline to strike down these subsections of the Campaign Law on the grounds stated by plaintiffs where the narrow facts before the court do not support their contentions.

The judgment is reversed.

HOLMAN, FINCH and DONNELLY, JJ., concur.

SEILER, C. J., concurs in result in separate opinion filed.

BARDGETT, J., dissents in separate dissenting opinion filed.

MORGAN, J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge (dissenting).

I respectfully dissent.

I realize the principal opinion attempts to construe and decide only narrow questions directly presented in this particular case, but I find it difficult to readily discern the actual perimeters of the opinion. It may be that some of the issues spoken of in this dissent have not been ruled by the principal opinion and will be the subject of subsequent litigation. I do not intend to inferentially broaden the principal opinion by this dissent nor to indicate that issues not decided have been decided but, as noted supra, I have difficulty in discerning the precise perimeters of the principal opinion.

The first question presented arises from the circuit court's judgment holding that the provisions of section 130.035, subd. 1(5) and (6), constitute an unlawful arbitrary classification in violation of the Fourteenth Amendment, United States Constitution.

Section 130.035, subd. 1(5) and (6), specifies what income and gifts must be disclosed by the candidate. The provisions relating to income reporting are the particular items in this case and the resolution of the issue requires that the court decide what is meant by "source of income" in view of the constitutional attacks upon this statute.

Section 130.035, subd. 1(5) and (6), provides:

"(5) A specific listing of the source, by name and address, of any gifts or income in excess of *one hundred dollars received by the candidate* or the candidate's spouse or minor children during the preceding twelve months or the time of the last report, whichever is later; and

"(6) A specific listing of the source, by name and address, of any gifts, salaries, fees, *or other income which for the twelve-* month period preceding the filing date individually or in the aggregate *exceeds five hundred dollars which has been paid* on behalf of or *for services rendered by the candidate to any sole proprietorship, partnership or corporation in which the candidate* or the candidate's spouse *holds an interest of ten percent or more.*" (Emphasis added.)

The circuit court held that section 130.-035, subd. 1(5) and (6), creates two arbitrary classes of persons, to wit: (1) sole practitioners or businessmen and (2) persons doing business as partnerships, corporations, or other forms of business associations, and that the reporting of income requirements of the law violated the Fourteenth Amendment of the United States Constitution "by subjecting them [candidates] to classifications that impose unequal burden of disclosure upon them without advancing any rational or justifiable state interest in such classification . . . .."

Actually the law creates at least one more classification in that a person who practices a profession or does business in a firm or corporation but holds less than a ten percent interest in the business is not required to disclose the name of any client or customer even though the candidate performs all the services for the client, patient, or customer and his firm receives an extremely large sum in compensation and even though the candidate's share is in the thousands of dollars. This candidate only gives his firm name as the source of his income.

This instant case does not involve a candidate who does business in a firm or by a corporation in which the candidate holds less than a ten percent interest and therefore the principal opinion does not consider this third classification in ruling the case. I point it out merely to show that there are a number of classifications which receive different income-reporting treatment even though the true classification is that of "candidates for political office". It is within that classification (candidates for political office) that, in my opinion, the law

treats certain candidates differently than others with respect to the same matter—income reporting.

"The parties to this litigation stipulated (Tr. at 18) that a large law firm is a partnership or professional corporation having twenty or more partners or shareholders and that most partners in such large law firms would not have an interest of 10 percent or more in the firm. It was further stipulated that among the clients of most large law firms are corporations, agencies or other entitles whose legal and business affairs are of public interest to the citizens of Missouri, including public utilities regulated by the State, manufacturers whose business activities are subject to governmental regulation, banks in which governmental funds are deposited, and construction companies which do business with governmental units. (Tr. at 18) Under the classifications established by this Act where such clients are represented by large law firms having a partner who is a candidate, no disclosure of the business as a source of income to the candidate is required, notwithstanding a substantial personal interest in the affairs of such a client." (Respondents' brief p. 8.)

It appears the law rewards the laundering of money income and discriminates against single proprietorships and small firms or businesses with no discernable purpose which would be reasonably related to the purpose of the legislation nor justify the discrimination inherent in the subclassification.

While I am not satisfied the principal opinion covers all aspects of the attorney-client privilege with reference to the identity (name and address) of the client, I believe some discussion is needed. The principal opinion relies upon VIII Wigmore, sec. 2312; *Mauch v. Commissioner of Internal Revenue,* 113 F.2d 555 (3d Cir. 1940); *United States v. Long,* 328 F.Supp. 233, 236 (8th Cir. 1971); *In re Grand Jury Proceedings,* 517 F.2d 666 (5th Cir. 1975); *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960); to conclude that the identity of a client is not

within the scope of the privilege and that whether the identity of a client is privileged must be assessed on a case-by-case basis and depends upon the particular facts of each case.

In *Ex parte Schneider,* 294 S.W. 736 (Mo. App.1927), it was held that an attorney was not required to divulge the address of his client as that was included within the confidential privilege which privilege had its roots in the common law and is based upon broad ground of public policy. Since the litigation did not involve the particular client the attorney was not required to divulge the address of that client.

There is no precedent whatever for a ruling that upholds the wholesale divulgence of clients, patients, and customers. In *City of Carmel-by-the-Sea v. Young,* 2 Cal.3d 259, 466 P.2d 225, 85 Cal.Rptr. 1 (1970), the California Supreme Court had before it a 1959 financial disclosure law relating to public offices and employees. That court held the law violative of the United States Constitution, Fourth Amendment, as an invasion of the officeholders' right to privacy. I realize the principal opinion does not rule the case on a right to privacy basis but *Carmel-by-the-Sea,* supra, and its successor, *County of Nevada v. MacMillen,* 11 Cal.3d 662, 522 P.2d 1345 (1974), are highly instructive on the validity of the type of law involved in this case.

In *County of Nevada v. MacMillen,* supra, the California Supreme Court upheld the validity of the disclosure act but only on the basis that "Source of Income" did not mean the names of clients, customers and patients. The court there said at 1352–1353:

" 'Source of income'—As we pointed out above, section 3700, subdivision (b), requires specified officials to disclose each 'source of income, loans or gifts, aggregating two hundred fifty dollars ($250) or more in value, received in the preceding 12 months, including the name, address, and general description of the business activity of each source . . .' Plaintiffs have forcefully contended that this provision would constitute a gross invasion of privacy if interpreted as re-

quiring businessmen to reveal their confidential customer lists, lawyers to name their clients, or physicians and psychiatrists to disclose their patients. We believe, however, that this problem has been rendered moot in practical effect by the clarifying amendment to section 3610, subdivision (e), enacted in 1974. *That amendment defined the term 'source of income' as 'the business entity or activity of the official which earned or produced the income.'* (Italics added.) Thus, as we read it, the act, as amended, would not require disclosure of the names of the official's customers, clients, or patients. Instead, the official must only disclose the specified information regarding his own business entity or activity, which produced the income. For example, a landlord would disclose the address and receipts from his apartment building, not the names of his tenants and the rents paid by each.

"[8] Although the amendment does not take effect until January 1, 1975, the Legislature has expressly found and declared 'that the amendments effected by this act are declaratory of the legislative intent in enacting' the 1973 act. (Stats. 1974, ch. 48, § 6, p. 161.) Although we are not bound by the Legislature's statement regarding the 1973 legislation, that statement properly may be considered in construing the provision in question. (See *West Pico Furniture Co. v. Pacific Finance Loans,* 2 Cal.3d 594, 609–610, 86 Cal.Rptr. 793, 469 P.2d 665; *Stockton Sav. & Loan Bank v. Massanet,* 18 Cal.2d 200, 204, 114 P.2d 592; *Flewelling v. Board of Trustees,* 178 Cal.App.2d 168, 172, 2 Cal.Rptr. 891.) We conclude that the 1973 act should be interpreted as requiring only the limited disclosure· contemplated by the 1974 amendment."

None of the authorities cited in the principal opinion concern a situation where the lawyer is called upon to make a wholesale disclosure of all clients or, if not all clients, those who have paid a fee of over a specific sum of money. None of the cases or authorities support a proposition that the amount of a fee can be utilized as the criterion for disclosure of the name and address of the client or patient. All of the authorities and cases concern a particular pending case in which there are contesting parties. None of them concern a situation where no litigation is pending which involves an interrelationship between the attorney and his client. All of the cases where disclosure was required are seen as exceptions to the general policy which exceptions are premised upon particular factual situations involving a specific lawyer, a specific controversy and either a specific client or a specific group of clients who come within a specific category which is directly related to pending litigation.

In the instant case the principal opinion allows or gives different definitions to the "source of income". The elections commission has done the same thing so as to relieve a grocer from the obligation of revealing the names of customers who purchase goods in excess of $100.[1] The grocer need only give the name and address of his business as the "source of income" but an insurance salesman who receives a commission on the sale of a policy of over $500 need not disclose the name of the customer *if the* insurance salesman works directly for the insurance company and does not own more than a ten percent interest in the company.[2] What insurance salesman owns more than ten percent of an insurance company? *But,* if another insurance salesman operates through an agency and sells the same policy, he must disclose the name of the customer as the source if that salesman owns a ten percent interest in the agency! Identical salesmen, identical policies, identical premiums, *but* one must reveal names and addresses of customers and the others need not do so. This is not equal protection.

In my opinion the law under attack clearly violates the Fourth Amendment rights of

1. Advisory Opinion 1976–1.

2. Advisory Opinion 1976–3.

privacy as well as being violative of the equal protection clause of the United States Constitution as to the candidate.

It appears from the principal opinion that this law is being viewed purely from the perspective of the candidate. But what about the rights to privacy of the clients, customers and patients, as well as their rights to the confidential relationship between attorney-client and doctor-patient.

The impact of this law as the principal opinion interprets it can be best seen if it is viewed from the client-patient-customer perspective. None of them gave permission to have their names and addresses publicized and there is absolutely no reason to believe that the client, patient or customer cared one whit about politics, campaigns, or the political ambitions of his lawyer, doctor or merchant.

Consider for a moment the outcry over the clear violation of citizens' constitutional rights if the law sought to obtain the same result by requiring the individual patient, client, or customer to file a statement in the county clerk's office declaring the citizen had consulted a doctor, lawyer, or had done business with the merchant *if* any of them became a candidate for any public office. I believe the outcry would be "It's none of your business—I'm not in politics and made no political contribution—What has my consulting a psychiatrist or a lawyer on a personal matter have to do with his running for some office—I didn't even know he was going to run when I went to him!!!"

This is simply a dragnet procedure that bears no relevant relationship to honest elections. No one has suggested why this broad invasion of private rights is necessary to the conduct of honest elections. Some suggest it is to ferret out hidden political contributions and others say it is to reveal the candidate's interests as they may bear upon his future vote as a public official. These various ideas as to purpose fall on their face in view of the various definitions of "source of income" which allow substantial incomes to be concealed while requiring insubstantial incomes to be revealed by names and addresses of clients, customers, or patients.

I could possibly vote to uphold this law if "source of income" were judicially defined as California has defined it, to wit, "the business entity or activity of the official which earned or produced the income," because that would protect the rights of privacy of clients, customers, and patients.

The principal opinion suggests an attorney candidate could obtain relief by an advisory opinion of the commission or a declaratory judgment suit. How does he do that without revealing that which he believes ought not to be revealed—the names and addresses of clients? And how long does the procedure take?

Filings for offices voted on at an August primary close at the end of April so there are three months between closings of filings and primary election during which time the candidate should be campaigning—not litigating. He probably couldn't get a final determination by the date reports are due any way. This year that date is June 24. The remedy is, in my opinion, specious.

And what about the patient who consulted a psychiatrist, gynecologist, or psychologist, or the citizen who consulted a lawyer on a private matter where the consultation or representation would not become the subject of a suit in court where the name would obviously become a matter of public record? The policy of the confidential relationship is for the principal benefit of the client and patient—not the doctor or lawyer. But the client or patient, the party really protected by the privilege, has no vehicle for relief. He is just caught in the dragnet without his consent, without his prior knowledge, and without any discernible public purpose being served.

As to "overbreadth", the principal opinion relies upon *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The entity claiming the federal law was overbroad in *Buckley* was a minority political party, not an individual candidate, and the subject was political campaign contributions—not

income derived in the usual course of the candidate's occupation or profession. The overbreadth claim related to the possible chilling of political activity if the names of *small political contributors were revealed.* The focal point was specifically "political contributions"—an identifiable item which bears directly upon elections. In the case before this court, the items the principal opinion holds are subject to disclosure are *not* political contributions and no one pretends that they are such. Any "chilling" claim in the instant case would relate to the right or privilege of the doctor, lawyer, or merchant running for office and, in my opinion, would be a substantial claim.

This law is not restricted in its scope to public offices which become full-time positions for the successful candidates but also includes thousands of part-time offices where the officeholder continues to engage in his usual profession or occupation in the community. E. g. school board member, city councilman, legislator, and members of innumerable local governmental boards. It is obvious to me that the instant law at least "chills" and probably "freezes out" whole classes of citizens from seeking any public office and does so without any discernible or demonstrable public benefit being derived from the law's operation.

But the effect of the instant law is not only that it unlawfully chills the privilege or right of merchants, doctors and lawyers to seek some public office, it requires the wholesale publication of names and addresses of people generally who, as a class (clients, patients, customers), are not politically involved at all and who did not make any political contributions whatever but who merely consulted a professional person or made a purchase from a merchant. The overbreadth claim here is, in my opinion, obvious and patent. In short, the income-reporting provisions under attack here are like using a "guillotine to cure a headache" and even then without any substantial showing that a headache exists.

Time for research in depth as to the constitutionality of the income-reporting re-

quirements of this law has been cut short by a court-self-imposed deadline in order that the decision can be known by June 24, 1976. My research has failed to reveal any law of any state or of the United States that mandates wholesale disclosure of clients, patients and customers. The federal campaign election law does not concern itself with this type of disclosure at all. It relates to political contributions and, in my opinion, gives no support to the principal opinion in this case.

I think the United States and Missouri constitutions protects the citizens from this type of purposeless invasion into their rights of privacy. Therefore, it is my opinion the patients, clients, and customers of doctors, lawyers, and merchants who happen to be candidates for some political office, have a constitutionally protected right to say to government: "It's none of your business who I went to and consulted in my personal life with my medical and legal problems, nor who I bought an insurance policy or television set from—It's just plain none of your business!!!"

SEILER, Chief Justice (concurring in result).

As pointed out in Judge Bardgett's dissent, there are many matters which are unresolved by the principal opinion and which remain live questions in the area of concern. I understand the principal opinion to be quite narrow in its scope and to confine itself to the precise facts of the case as they apply to plaintiffs. I therefore concur in the reversal of the judgment.